CASE 46—CRIMINAL CASE—APRIL 21, 1882.

# Bush v. The Commonwealth.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. The case was not transferred to the United States court, and the cir-
cuit court had jurisdiction.
2. There was no error in the instructions.
3. A rule which excludes a witness in a criminal case on account of his
religious belief, or his disbelief in any system of religion, is in
violation of the constitution and the policy of free government.
4. There was no error in rendering the judgment at the time it was
done.

ALFORD & SMITH FOR APPELLANT.
   No brief.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.
   No brief.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This is an appeal from a conviction and sentence of death
on an indictment charging murder. On a former appeal
from a like sentence the case was reversed because of im-
proper instructions. (78 Kentucky, 268.) On this appeal
the complaint is—

*First.* That the court below had no jurisdiction to try the
cause, because it had been transferred to the circuit court
of the United States;

*Second.* That the instructions given in the case did not conform to the law as laid down by this court on the former appeal;

*Third.* That improper testimony was allowed to be considered by the jury; and,

*Fourth.* That sufficient time was not allowed to intervene between the verdict and the sentence.

Upon the first point, it is insisted for appellant that, being a negro, he was deprived of equal civil rights, in that the grand jury which returned the indictment against him, and the trial jury which returned the verdict against him, were composed exclusively of white persons, and that persons of his own race and color were excluded from the juries on account of their race and color. It is claimed that a petition embracing these allegations was filed before the final disposition of the case, as required by section 641 of the Revised Statutes of the United States, and that, by virtue thereof, the jurisdiction to try and determine the case passed to the United States circuit court. The record does not show this to be true. There is an affidavit by appellant that such a petition was filed, but a copy of the petition is not exhibited. An inspection of the petition is essential to determine whether it contained allegations sufficient to authorize a transfer, and in its absence it must be presumed that it was defective in the allegation of jurisdictional facts, and therefore that the court below did right to disregard it. It is insisted further that if the record does not show that there was a transfer of the case by the filing of the petition, as stated in the affidavit, that the case was transferred by a petition exhibited in the record, and which was offered to be filed after the verdict and sentence, and after a motion for a new trial had been overruled. If it be conceded that

this petition states facts sufficient to give the Federal court jurisdiction, it is clear that it comes too late. It is provided. in the statute that the petition must be filed before "the trial or final hearing of the cause," and a petition. filed after verdict and sentence is manifestly too late.

As to the instructions, it is only necessary to say that they substantially conform to the law laid down on the former appeal, and could not have misled the jury from the real issue presented for their consideration.

The objection to certain testimony allowed by the court to go to the jury presents two questions:

*First.* When a witness is offered to prove what a deceased person testified to on a former trial of the same cause, what is the test, and by whom applied, to determine the question of admissibility of the witness to testify, and of the competency of the evidence when heard?

*Second.* Does the want of religious belief incapacitate a witness, and can that belief be inquired into in any way?

Upon the first subdivision the law is, that when the witness states, as in this instance, that he remembers the substance of all the deceased witness testified to, both on the direct and on the cross-examination, he is a competent witness, and when the evidence is heard, if it does not clearly appear that the witness does not remember the substance of all that the deceased person testified to, the evidence should be permitted to go to the jury; but if it be manifest to the court that he does not so remember, the evidence should be rejected. The testimony of each witness who undertakes to detail the evidence of a deceased witness must be tested by the same rule, and if found admissible must stand by itself, and consequently apparent or actual contradictions in the testimony of witnesses who

purport to relate the substance of the evidence given by a deceased witness, goes not to the admissibility of the testimony, but only to its weight with the jury.   Nor is it every incidental or immaterial matter in reference to which the memory of the witness appears to be at fault that will authorize the court to exclude the whole.   If the statement appears on its face to cover the substance of what the deceased witness testified to in reference to the material matters in issue, the evidence should be allowed to go to the jury for their consideration.   Where the witness stated that he heard the whole of the testimony of the deceased witness, and that he remembers the substance thereof, the court will not be justified in taking it from the jury, unless from the statement of the witness himself, it obviously appear that he does not remember the substance of what the deceased witness testified to in reference to the material issues being considered.   Applying these tests, we see no reason to question the correctness of the rulings of the lower court in admitting the testimony of the two jurors who purport to give the testimony of the deceased witness who testified on the former trial.

The question embracing the second subdivision is novel, if not more serious and difficult of determination.   The question arises on this state of fact: The Commonwealth offered C. C. Moore as a witness, and objection to his being sworn was made by counsel for the accused, who stated that he could prove that Moore was an Atheist, did not believe in any God or future state of rewards and punishments, or in any state of accountability hereafter.   The objection was overruled by the court, and the witness being interrogated, stated that he believed that it was morally wrong to tell a.

lie, and that he recognized the obligation of his oath in every sense of the. word.

It is admitted that the modern common law requires, as a condition precedent to the admission of the testimony of a witness, that he believe in a supreme being who will punish, either here or hereafter, one who swears falsely; that the objection should be made before he is sworn, and that the alleged disbelief should be established by the testimony of such persons as may have heard the proposed witness declare his opinion on these matters, and not by the examination of the witness himself. In the time of Lord Coke it was held that no one but a Christian was a competent witness, but this rule was modified until belief in the existence of a supreme being who will punish false swearing, either in this life or in the life to come, is held sufficient. Now, by statute in England, and in most of the states of the United States either by statute or by reason of constitutional provisions, religious disbelief does not disqualify. The unquestioned tendency of modern legislation, as well as of judicial interpretation, is to the exclusion of inquiry into religious belief as a test of the competency of a witness. In this state, legislation in civil cases at least has kept pace with this tendency, so that, by virtue of the provisions of the Civil Code, no religious test can be applied. Under that Code every person, subject to certain exceptions, of which this is not one, is competent to testify unless he be found by the court incapable of understanding the facts concerning which his testimony is offered, and when the witness is conscientiously opposed to taking an oath, he may affirm. (Sections 605 and 680 of Civil Code.) In the Criminal Code, however, there are no such provisions, and, therefore, in the administration of the criminal and the penal law, the

~rules of evidence recognized at common law are still in force, unless changed or abrogated by the organic law as expressed in the constitution.

Upon the point under consideration, we are of the opinion that the constitution changes the common law rule, and makes competent as witnesses all persons so far as any religious test is concerned. The fifth and sixth sections of the bill of rights, when considered together, seem to cover the exact case under consideration. The fifth section declares the natural and indefeasible right of all men to worship God according to the dictates of their own consciences; that no one shall be compelled to attend, erect, or support any place of worship, or to maintain any ministry; that the rights of conscience shall not be interfered with, and that no preference shall ever be given by law to any religious societies or modes of worship. The object of this provision was to make the divorce between church and state irrevocable, to establish unequivocally that the province of government is to deal with the temporal relations and affairs of men, and in no case with matters spiritual, and that, under no circumstances, should any burden be placed upon any one, or any penalty enforced on account of opinion in reference to religious or spiritual matters.

The sixth section is as follows: "That the civil rights, privileges, or capacities of any citizen shall in nowise be diminished or enlarged on account of his religion."

The obvious meaning of this is, that whatever civil rights, civil privileges, or civil capacities belong to or are enjoyed by the citizens generally, shall not be taken from or denied to any citizen on account of his opinions in regard to religious matters. It. is a declaration of an absolute equality, which is violated when one class of citizens is held to have

the civil capacity to testify in a court of justice because they
entertain a certain opinion in regard to religion, while another
class is denied to possess that capacity because they do not
conform to the prescribed belief.    Free governments deal
with the acts of the citizen and not with his thoughts.    To
proscribe or punish for religious or political opinions is of
the essence of despotism.    To apply the rule insisted upon
would be to make a religious test, which is contrary as well,
to the letter as to the spirit of the constitution.    If the test
can be applied in this case, it may be applied in any, for, inde-
pendent of this provision of the constitution, there is nothing
to prevent the legislature from passing any law they think
proper prescribing particular denominational standards of
belief as a test of competency to give evidence.    In that
case, any Christian denomination being in the ascendency
in the legislature might pass a law depriving all other Chris-
tian denominations of the capacity to testify as witnesses;
and, on the other hand, if it should ever happen that Atheist.
or Deist were in a like ascendency in the legislature, there
would be nothing to prevent them from proscribing all
Christians in the same way.    And further, the enforcement:
of the rule contended for might present, as suggested by
Judge Scott in Perry's Case, 3 Grattan, a case in which one
believing in the prescribed formula would be sentenced to
death by an Atheist circuit judge, the sentence and judg-
ment affirmed by an Atheist appellate court, and denied.
pardon by an Atheist governor; for in no case are any of
the officers required to conform to any belief as a condition
precedent to the holding of an office and to the exercise of
its functions.    If such a case should occur in which a Chris-
tian man should suffer death, though innocent, because an
Atheist was denied the capacity to testify in his behalf,

every citizen would denounce such a rule thus applied as
absurdly unjust, oppressive, and in violation of the spirit
of our institutions.   Again, an Atheist may testify in any
case where property rights are in issue in a civil proceeding,
and to deny the Commonwealth or the accused the same
testimony when life or liberty is at stake, presents an anomaly that is repugnant to every sense of justice.   The opinion
in the Perry case, above referred to, reaches, in construing
a similar provision in the Virginia constitution, the conclusion at which we have arrived.   We think that this provision of the constitution not only permits persons to testify
without regard to religious belief or disbelief, but that it was
intended to prevent any inquiry into that belief for the purpose of affecting credibility.   It places the Atheist, in this
regard, on the same footing as any other witness, and leaves
the question as to credibility to be inquired into in the same
way.

We are of the opinion that the sentence was not pronounced too soon after the verdict.   Verdict was rendered
on the fifth day of the term, and on the seventh sentence
was pronounced.

Section 283 of the Criminal Code provides that sentence
in a felony case shall not be pronounced until two days after
the verdict is rendered, unless the court be about to adjourn
for the term.   There appears no reason why the construction applied in ordinary cases, which is to count the day
on which the act is done, when the limitation runs from the
act, as in this case, and not from the day, should not be
applied here.   Beside, there is nothing to indicate that
further delay could, in any way, have been beneficial to
appellant.

Judgment affirmed.