160 So.2d 652

**Ollis Howell GOODSON**

v.

**STATE.**

**6 Div. 898.**

Court of Appeals of Alabama.

Oct. 22, 1963.

Rehearing Denied Jan. 28, 1964.

Prince, Jones, Fowler & Propst, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

JOHNSON, Judge.

After the overruling of his motion for a new trial, Ollis Howell Goodson appeals from a judgment of conviction in the Jefferson County Circuit Court of buying, receiving or concealing stolen property valued at $250.00.

Artie Dunn testified for the State that on the night of December 11, 1961, he parked his two door blue and white 1954 Chevrolet automobile on the street in front of his home in Attalla, Alabama. The number of the license tags was 31–19090 and the vehicle was registered in his name. On the morning of December 12, he discovered that the automobile was missing.

State's witness, H. J. Norman, Investigator for the Jefferson County Sheriff's Department, testified that he arrested Goodson at his place of business on January 15, 1962, and that the next day, while searching the attic of defendant's filling station, located at 5800 First Avenue, North, in Birmingham, Alabama, he found the automobile tags numbered 31–19090, which he discovered were registered in the name of Artie Dunn. On January 19, 1962, he took Dunn to Eugene Curtis Cagle's used car business. Cagle accompanied Norman and Dunn to Roy Fallon's place in Birmingham, Alabama, where Dunn discovered the blue and white 1954 Chevrolet.

Cagle had sold the Chevrolet to Fallon and gave Dunn a 1956 Ford in settlement of Dunn's claim against him. Cagle had bought the car from the defendant, Goodson, on or about December 14, 1961, giving

as consideration a check dated December 14, 1961, for $210.00 which was introduced into evidence. Cagle testified that the 1954 Chevrolet did not have license tags on it when he bought it but that he put a tag on it before selling it to Fallon. Cagle and Goodson both testified that Goodson telephoned Cagle, described the automobile to him and offered to sell it, and that Cagle offered $250.00 for it over the telephone. After Cagle looked at the automobile, he offered $210.00 for it, which Goodson accepted. Cagle testified that he thereafter spent about $80.00 on the car and sold it to Fallon for $440.00.

Goodson testified that he was thirty-four years old and that he operated a service station in Birmingham from September 1, 1961, to January 15, 1962. He owned the merchandise and subleased the building from Charlie Wright and Bennie Hamilton, who had it rented from a Mrs. Loveless. Jerry Carty, a mechanic in his early twenties, worked for Goodson on a minimum salary-commission basis from the first week that Goodson began the business. Jerry was a nephew of Melvin Conniemack Carty, whom the defendant testified he had seen twice at the filling station.

The appellant testified that he did not know that the automobile had been stolen; that he purchased it on December 11, 1961, from Arthur Winslow who was introduced to him by Jerry Carty in the presence of a third person known to Goodson as Johnston or Johnson, whom he had seen a number of times at car auctions; and that at the time of the purchase, the car had dealer's tags on it. Goodson further testified that Winslow gave his address as Route Two, Glencoe, Alabama, but stated that a subsequent search revealed that no one by the name of Arthur Winslow was known in that vicinity, and Goodson stated that he has not seen him since the sale. Goodson also testified that Winslow showed him a 1961 registration and a paid garage repair bill for work done on the motor, and gave him a bill of sale for the 1954 Chevrolet as a receipt for the $200.00 cash which Goodson said he paid him.

From the time of his release on bond to the date of his trial, defendant has worked for Automotive Equipment Company, owned by Mr. and Mrs. Wright, who are the same people from whom he rented the station at the time of his arrest. Goodson was released in March of 1961 after serving part of a six year sentence for a 1954 bank robbery committed at Vina, Alabama. Between March and September of 1961, he worked for Abercrombie Chevrolet in Carbon Hill, Alabama.

Called as a witness for the defendant, Melvin Conniemack Carty, a federal prisoner with an admitted record of convictions for repeated violations of various State and Federal laws, testified that while he was an escapee from the Indiana State Farm, he and an individual by the name of "Johnny" stole the car. Johnny disposed of the car alone and returned and split with him the money received from the sale of the car, which was more than $150.00.

On the night of January 14, 1962, the two Cartys were arrested and charged with committing burglary. On the morning of January 15, Goodson reported to the police that his own automobile had been stolen and on the afternoon of that same day Investigator Norman arrested him. Goodson testified that he was not aware that the Cartys were part of an automobile theft ring until after his arrest.

Appellant's first contention of error on appeal is that the trial court erred in refusing to grant his motion to exclude Investigator Norman's answer to a question propounded by the solicitor on his re-direct examination. The record reveals that the trial court's action was proper and correct; first, because the defendant's motion came too late and, second, because the record does not support the grounds assigned for the motion. That part of the record upon which defendant assigns this error is set out next.

"Q. (BY MR. BARNARD) You say Mr. Carty admitted to you he did steal the car?

"A. Yes, sir.

"Q. And in the same admission, did he tell you what he did with the car?

"A. Yes, sir.

"Q. What did he tell you?

"A. He said he sold it to Ollis Howell Goodson for the sum of twenty-five dollars.

"MR. BARNARD: All right, sir. That's all.

"MR. JONES: I move to exclude that. I had no way of knowing what his answer was going to be. He is trying to get in, by this witness, something somebody else said, who has already admitted the theft of the car. The confession could never go to implicate the man, anyway.

"THE COURT: I'll overrule your objection there."

■ Defense counsel could have made timely objection to the solicitor's question, "What did he tell you?". Having failed to object to the question, the defendant's counsel could not delay his objection until he knew whether the witness's answer would be helpful or damaging to his case. Having done so, he is bound by the answer.

"It would seem hardly to be necessary at this late day again to observe that a trial court cannot be put in error for overruling objections on motion * * * when the objection or motion comes too late." Sovereign Camp of Woodmen of the World v. Keefe, 203 Ala. 636, 84 So. 810.

" * * * the motion to exclude could not properly be made a predicate for error in the absence of seasonable objections and exceptions, which were not interposed." Copeland v. State, 252 Ala. 399, 41 So.2d 390.

■ We note that immediately before this part of the trial, defense counsel, in examining witness Norman on cross-examination, had asked him, "You say, then that Conniemack did admit to you that he was the one who went and got the car?". To which Norman replied, "Yes, sir." It is an elementary rule of evidence that if, in the examination of a witness, one party brings out a part of a conversation or transaction, the other party may inquire fully into the conversation or transaction. Flournoy v. State, 40 Ala.App. 629, 120 So.2d 121; Campbell v. State, 32 Ala.App. 461, 27 So.2d 220; Colvin v. State, 260 Ala. 338, 70 So.2d 654; Bullard v. State, 40 Ala. App. 641, 120 So.2d 580.

Defense counsel might have been apprehensive of the type of testimony that the solicitor was seeking because immediately before his re-direct examination of Norman, the solicitor announced, "I just want to make sure that if it comes out as part of the conversation, that I can get the rest of the conversation in."

■ We have searched the record paying particular attention to the participation of the trial judge in the proceedings. The merits of the appellant's contention that the trial judge demonstrated prejudice against him are not before us because counsel raised no objection during the trial to the conduct of the trial judge.

"The remark of the court complained of, to wit, 'Both the other witnesses say this boy was not there,' however improper, cannot effect a reversal of the judgment in this case, as it went unchallenged by objection or exception and motion to exclude." Gilbreath v. State, 23 Ala.App. 162, 122 So. 309.

The appellant urges that his judgment of conviction should be reversed because of the following mistake made by the solicitor in his argument to the jury:

" ' * * * this man, who has been in the penitentiary, a bank robber, out on parole, put back in the penitentiary —'

"MR. JONES: We object to that. There is no evidence of that in this case at all.

"THE COURT: I believe when you asked the defendant, that he admitted it. That is my recollection of it.

"MR. JONES: No, sir.

"THE COURT: Gentlemen, you know what the testimony was. If it is not in, don't consider it.

"MR. BARNARD: I am in error there, gentlemen. That came out in testimony when I was asking this character witness had he not heard these things, and that did not come to you as direct testimony.

"THE COURT: Don't consider that part.

"MR. BARNARD: Gentlemen, I apologize to you, and assure you it was a slip.

"THE COURT: About the parole being revoked, just don't consider that part of it."

We observed that after the defense counsel pointed out the mistake to him, the solicitor corrected his argument and apologized to the jury. Also the court immediately instructed the jury not to consider the erroneous argument. Any possible prejudice to the rights of the defendant were immediately cured.

The appellant's grounds for his motion for new trial have been fully considered by this court. In brief and oral argument, appellant asserts that the trial judge summarily denied his written motion for a new trial without reading it. The record does not speak on this point, but, even if such was established, we conclude, after careful consideration of the record before us, that the defendant would not be entitled to a new trial.

Therefore, this cause is due to be and the same is hereby

Affirmed.