250 So.2d 609

**Cato GREATHOUSE**

v.

**STATE.**

**1 Div. 34.**

Court of Criminal Appeals of Alabama.

June 29, 1971.

Kenneth Cooper, Bay Minette, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was indicted for murder in the first degree, convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for fifteen years.

The attorney for the appellant on appeal has included in the transcript an assignment of error and has argued in brief the points raised. This is permissible, although not necessary on appeal in a criminal case. In addition to our duty to search the record for error, we have responded to matters specifically raised in said assignment.

■ Appellant argues in support of Assignment of Error No. 3 that the court erred in admitting the signed statement of defendant made at the jail and testified to by witness Tolbert because it was not shown to be voluntary under the well known rule set out in Sanders v. State, 278 Ala. 453, 179 So.2d 35; Lokos v. State, 278 Ala. 586, 179 So.2d 714; Myhand v. State, 259 Ala. 415, 66 So.2d 544. This rule is as follows:

"It is well established by our cases that extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears it should not be admitted." *Lokos,* supra.

Before the introduction of the statement above referred to, Deputy Sheriff W. A. Tolbert testified that just prior to making the statement the defendant was advised as follows:

"Q. Was the statement that he gave you at that time freely and voluntarily made?

"A. It was.

"Q. Did you or any one in your presence threaten him, intimidate him or use any force or violence on him to get him to make the statement?

"A. No sir.

"Q. Did you or any one in your presence offer him any reward or hope of reward to get him to make the statement?

"A. No sir.

"Q. Did you tell him that he was entitled to have an attorney present?

"A. Yes.

"Q. Did you tell him if he was unable to employ counsel, counsel would be employed by the State of Alabama?

"A. Yes sir.

"Q. Did you tell him that any statement he made could or would be used against him?

"A. Yes sir.

"Q. Did you tell him that once he started answering questions that he could stop at any time?

"A. Yes sir.

"Q. Did he then make a statement to you concerning the death of Lawrence Joiner?

"A. Yes sir."

After objection, appellant's counsel examined the witness on voir dire. On this examination the witness reiterated his direct testimony on this question as follows:

"Q. You informed him everything Mr. Hendrix inquired of you?

"A. I sure did.

"Q. What else did you tell him?

"A. Nothing only I asked him questions. I asked him did he want to make a statement on it and he said he might

as well as he had done come to the jail and told them he shot him.

"Q. Did you ask this man, Cato Greathouse, whether or not he fully understood what you explained to him? —In other words, all of the rights that Mr. Hendrix asked you about?

"A. I did; we told him that he had a right—he needn't tell us anything if he didn't want to and if he wasn't able to hire an attorney the State would furnish him one; he was told all of that.

"Q. Did you tell him that he didn't have to make a statement?

"A. I did.

"Q. You didn't ask him after you warned him of his rights whether or not he understood everything that you had told him?—You didn't ask him that, did you?

"A. I told—

"Q. —Just answer the question—I don't want to argue with you. You warned him of his rights but after you warned him you didn't ask him if he fully understood what he said?

"A. I told him anything he said could be used against him in Court.

"Q. But you didn't ask him if he fully understood everything?—Just answer the question yes or not.

"A. I will answer it YES.

"Q. You just said, Mr. Tolbert, that you didn't ask him anything or tell him anything before you took the statement other than the questions you answered for Mr. Hendrix?

"A. I don't know how to answer that Red, because I told him that anything that he told us could be used against him up here in a Court of Law.

"Q. You didn't, after you got through, and it is no sin if you didn't, but you didn't ask him if he understood everything that you explained to him?

"A. I don't remember whether I asked him that particular question or not.

"Q. You don't remember—and you didn't ask him then if he understood it and did he want to go ahead with the questioning anyway?

"A. Yes, I did, after I advised him of his rights I told him anything he said could be used against him and I asked him did he still want to make the statement and he said that he did.

"Q. Did you tell him even during the questioning that he had a right to have a lawyer sitting there with him?

"A. Yes sir.

"Q. Did he want a lawyer?

"A. I told him that he had a right to have one."

No other witnesses were offered on voir dire.

Objection of appellant to the introduction of the statement was based "on the grounds it has not been shown that he waived any of his rights as to the voluntariness of the confession, and it has not been shown to this court that he was asked whether or not he fully understood all of the rights that were explained to him in order that he could waive these rights if he saw fit." Objection was overruled and appellant excepted.

Under the testimony in this case, it appears that the rights of appellant under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, were fully explained to him before he made the statement introduced. There was adequate evidence from which the trial court could conclude that appellant intelligently waived his right to counsel before he was questioned.

■ In Assignments of Error Nos. 4, 5 and 6 appellant contends that the court was in error in permitting State's witness Tolbert to testify as to where a bed

was in the back room. The transcript shows the following:

"Q. Whose bed was that supposed to have been?

"A. I understood Cato's.

"MR. WILKINS: I object to that as hear-say.

"Q. Whose bed did they say it was?

"A. Cato's.

"MR. WILKINS: I object as hearsay and move to exclude the answer.

"THE COURT: Overrule the objection and deny the motion.

"MR. WILKINS: Except.

"Q. Was there another bed?

"A. Yes, next to the wall and also a door right there; it was boarded up.

"Q. I believe there was a stove there?

"A. Yes sir.

"Q. Now according to the statement that Cato gave you, Cato said he was in this bed, is that right?

"A. That is what I understood.

"MR. WILKINS: I object; that statement didn't say anything about where Cato was sleeping; it said deceased jumped on him in the bed.

"THE COURT: Overrule the objection.

"MR. WILKINS: Except."

The objections to this testimony were made in each instance after the witness had answered. Under the holding in Goodson v. State, 42 Ala.App. 266, 160 So.2d 652, the objection and the motion to exclude came too late and the court cannot be put in error on its rulings.

There was further testimony of witness Tolbert elicited on cross-examination as to the location of the bed, and testimony of Lester Greathouse on this same question

which would render harmless any error claimed.

In Assignment of Error No. 7 the appellant contends that "the trial court erred in permitting witness Nelson Grubbs to testify as to cause of death."

The only attempt by the State to question the witness as an expert was to show that he was a "State Toxicologist for the State of Alabama." No testimony was offered to show his study, practice, experience or observation by the particular subject under inquiry, as is required to authorize a witness to testify as to knowledge beyond that of an ordinary witness. Many cases directed to this proposition of law are collected and cited in Vol. 6, Ala.Digest, Criminal Law, ⊕478(1).

However, no objection was made at the trial to the failure of the State to properly qualify the witness as an expert, and no ruling of the court was invoked. Matters not objected to in trial court cannot be considered for the first time on appeal since a review on appeal is limited to those matters at which rulings are invoked at nisi prius. Smith v. State, 40 Ala.App. 600, 119 So.2d 202; Thompson v. State, 44 Ala.App. 414, 211 So.2d 505; Volunteer State Life Ins. Co. v. Danley, 33 Ala.App. 543, 36 So.2d 123, cert. denied 250 Ala. 702, 36 So.2d 132.

Testimony of State's witness Charles Kirby showed that he picked up the body of deceased within a short time after the killing in the early morning of January 18, 1969, and took it to the undertaking establishment for preparation for burial.

The Sheriff of Baldwin County and Deputy Tolbert arrived at the scene of the killing around 5:30 that morning and were there when Kirby came for the body. The toxicologist testified that he examined the body of the deceased that same day at the funeral home in Bay Minette and made an autopsy in which he found a gunshot wound in the face which was made from a 22 caliber bullet and which, in his opin-

ion, caused death of the victim. Objection was made to this testimony of the ground that it had not been shown that the body was in the same condition at the funeral home as when it had been found right after the shooting.

Under the circumstances there was no error by the court in overruling the objection made to the testimony of the toxicologist.

 The State called Lester Greathouse as a witness and during the direct examination by the State the court permitted the district attorney to cross-examine him as a hostile witness as to a certain statement he allegedly made and signed at the jail on the morning of the killing which contradicted his testimony in court. The appellant objected several times to this procedure and assigned as grounds therefor that the witness could not read or write and had suffered a stroke. No effort was made to offer any proof that the witness could not read or write or that he did not know the contents of the statement. Later on cross-examination of this witness by appellant, he testified that he could not read but would not say whether the statement was read to him. He did not deny signing the statement introduced by the State. No further objection was made by appellant to the action of the court. The ruling of the court was proper as based upon the objection made. We do not think it necessary to decide whether the circumstances would have justified the action of the court in allowing the district attorney to cross-examine the State's witness, had proper objection been made.

The assigning of a specific ground or grounds of objection is a waiver of all other and the assigning of the foregoing grounds operated as a waiver of grounds as to cross-examination of Lester Greathouse as a hostile witness by the State. Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378; Gulledge v. State, 232 Ala. 209, 167 So. 252.

In addition to the matter dealt with in response to the assignment of error, we have carefully searched the record for error and have none of a prejudicial nature to the appellant. The judgment in this cause is, therefore, due to be affirmed.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.