282 So.2d 95

**Jimmy Lee BUCHANAN**

v.

**STATE.**

**6 Div. 299.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Fred Blanton, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Samuel L. Adams, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Murder in the first degree: sentence, death by electrocution.

**I**

According to the tendency of the State's evidence, Buchanan appeared at a filling station in the north side of Birmingham on a rainy February night in 1970. He informed the three attendants present that this was a hold up and demanded their (and the oil company's) money. In the meantime, customers appeared blowing the horns of their cars to get waited upon. Buchanan told one of the attendants to go to the pump islands, serve the customers, bring the money back and not to say anything.

Apparently one of the attendants, James Harold Thomas, went outside and was followed by Buchanan. The two got into some kind of argument and struggle. Thereupon, according to the State's witnesses, Buchanan fired at least five shots into Thomas's body.

Two of these shots proved fatal, according to the pathologist's testimony. A ballistics test indicated that these two bullets, which apparently went through Thomas's heart, were fired from the gun recovered from a point near where Buchanan was later found.

Another station employee, Tennyson, brought out a long barrelled 22 caliber pistol and fired four shots at Buchanan hitting him at least three times.

The defendant brought in two witnesses from whose testimony it could have been concluded by the jury, that Thomas was killed by the bullets from Tennyson's gun, rather than from those attributed to Buchanan. However, the State established a tendency through the ballistics testimony that the fatal bullets came from the gun which was found near Buchanan's prostrate form after Tennyson had shot him.

**II**

Alabama, in its first degree murder statute, has a provision for certain parts of the felony murder doctrine: "Every homicide, * * * committed in the perpetration of, or the attempt to perpetrate, any * * * robbery, * * * ." (Code 1940, T. 14, § 314.)

Thus, even if the jury were to have been convinced beyond a reasonable doubt that the fatal bullets had come from Tennyson's gun, nevertheless, Tennyson's action was an attempt to prevent the robbery and therefore, the homicide was, in effect,

under the doctrine enunciated in other states, committed in the perpetration thereof. Hence, it would be attributable to Buchanan.

This alternative, however, we do not think is necessary in view of the ballistic testimony. A jury is not required to render an opinion, but merely to give a verdict of guilty or acquittal. The guilty verdict, of course, in Alabama, in homicide cases, ranges from murder in the first degree to manslaughter in the second degree. In this case we consider that from the evidence in this record that it is far more likely that the jury viewed the evidence as showing that Buchanan fired the fatal shots at Thomas.

### III

 We have reviewed the entire record under the requisites of T. 15, § 389 of the Code, rather than under the Automatic Appeal Act (T. 15, § 382(1)–382(13). We have pretermitted review under the latter statute because in this case Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, has intervened since the instant case was submitted to us. We think that the *Furman* opinion renders academic the use of the Automatic Appeal Act since the death penalty can no longer be exacted until further legislative action, if any, by the Legislature of Alabama. From this review we conclude that the judgment of conviction is due to be affirmed.

### IV

 On the authority of Hubbard v. State, 290 Ala. 118, 274 So.2d 298 the sentence of death heretofore imposed on the appellant, Buchanan, is vacated and set aside. In lieu thereof, the sentence is modified to provide that Buchanan be imprisoned in the penitentiary for the term of his natural life. The Clerk of this court shall certify a copy of this order to the Clerk of the Circuit Court of Jefferson County and the Clerk of that court shall issue a commitment herein based upon this sentence of life imprisonment and shall forward same to the Board of Corrections. The Board of Corrections, if it has not already done so, shall take Buchanan off "death row."

It follows that except as to the death sentence, the judgment of the circuit court is affirmed. With regard to the death sentence, the judgment of the circuit court is modified and the sentence is reduced to life imprisonment, and as modified, the judgment is affirmed.

Modified and affirmed.

CATES, P. J. and ALMON, HARRIS and De CARLO, JJ., concur.

TYSON, J., not sitting.