289 So.2d 650

**Gus CONNER, Junior**

**v.**

**STATE.**

**2 Div. 120.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Dec. 4, 1973.

---

Sheldon Fitts and Kirtley W. Brown, Marion, for appellant.

William J. Baxley, Atty. Gen., and David Lee Weathers, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Murder, second degree: sentence, thirty years in the penitentiary.

I

Conner, according to the State's evidence, managed to knock one William Johnson down in a roadway. While Johnson was still prostrate Conner ran his car over his body. James Small, a state toxicologist, testified that an autopsy of Johnson's body revealed the liver to be extremely lacerated. He testified the "cause of death was the injury to the internal organs as a result of the large abrasions and trauma to the anterior surface of the abdomen and chest."

Small further testified that the injuries were consistent with Johnson's having been run over with a car at slow speed.

The only eye witness who testified was Caroline Boone, evidently somewhat mentally retarded. She, after preliminary voir dire, was sworn as a witness. Her testimony, except for describing Conner's driving over Johnson, was not corroborated by Small's findings.

Specifically, she stated that Conner shot Johnson with a pistol and that Corene Getter stabbed Johnson in the back. Small

testified he found no bullet wounds nor any knife wound in the back.

## II

In view of the obviously limited intelligence of the witness Boone, we set forth the whole record as to her preliminary examination:

"CAROLINE BOONE

called on behalf of the State was seated in the witness seat.

"THE COURT: How old are you?

"A I don't know.

"THE COURT: How old?

"A I don't know, but I was definitely
—

"THE COURT: Do you know how old you are?

"A No.

"THE COURT: Do you go to church?

"A Yeah.

"THE COURT: Do you know the difference in telling the truth and telling a falsehood?

"A Yes, sir; I sure do.

"THE COURT: What do people who tell falsehoods and they die, what happens to them?

"A They go to heaven.

"THE COURT: Where?

"A Heaven.

"THE COURT: What about the ones that tell the truth, where do they go when they die?

"A I don't know, but I know I'm definitely dumb.

"THE COURT: There is some doubt in my mind as to whether she knows what being under oath is.

"MR. FAILE [Dist. Atty.]: Can I try?

"THE COURT: Yes.

"DIRECT EXAMINATION

"BY MR. FAILE:

"Q What is your name?

"A Caroline Boone.

"Q Do you know what it means to tell the truth?

"A Yes, sir.

"Q Are you going to tell the truth today?

"A Yes, sir.

"Q Do you know what it means to tell a lie? Do you know what it means not to tell the truth?

"A Yes, sir; I know what it means to tell the truth.

"Q Are you going to tell the truth today?

"A Yes, sir.

"Q Do you swear you're going to tell the truth?

"A Yes, sir.

"THE COURT: All right, you look around at me and hold up your hand and when I get through, you say, "I do." Now hold up your hand. The other one.

"(Whereupon Caroline Boone called on behalf of the State, was duly sworn and testified as follows, to-wit:)" [Bracketed matter added.]

At points during her interrogation defense counsel objected to the District Attorney's use of leading questions. The court remarked:

"THE COURT: I don't know how else you could put it. We haven't got an intelligent witness.

"MR. FITTS: Withdraw the objection.

"THE COURT: I'm going to give him a little more leeway because I think her intelligence is pretty low."

\* \* \* \* \* \*

"THE COURT: Well, some of them may be a little leading and Mr. Faile, don't lead her anymore than you have to, but she's not an intelligent witness and it was a close question of whether she could even qualify as a witness. I'm going to let him treat her like she was a young child on the witness stand because I think that's the way that you'll have to treat her."

The witness exhibited at times a weather vane type of suggestibility. Thus, on cross we find her testifying (in part):

"Q Have you ever looked at this face before?

"A No, sir.

"Q Never seen me before?

"A Yes, sir; I saw you.

"Q You did see me before?

"A Yes, sir.

"Q Where did you see me?

"A Up when I come up there?

"Q In the office?

"A Yes, sir.

"Q You talked to me up there that day?

"A Yes, sir.

"Q Did you see me after then?

"A Yes.

"Q Where was I?

"A You were up here when I come up to your place.

"Q Did you ever see me in a cotton patch?

"A No, sir.

"Q When you were picking cotton?

"A Yes, sir; I was in the cotton patch and you come down there and talked to me.

"Q You did see me out there?

"A Yes.

"Q Now, do you remember?

"A Yes, sir; you come up there and I got in the car and talked with you.

"Q All right. Now you do remember me, don't you?

"A Yes, sir."

\* \* \* \* \* \*

"Q And when you got to Uniontown, what did you do there?

"A Didn't do nothing when I got there.

"Q Where did you go?

"A Went with them.

"Q How long did you stay there in Uniontown?

"A I stayed there in Uniontown a long time.

"Q Did you go around to the Highway?

"A Yes, sir; I went around there until they got ready to go.

"Q Who did you go around there with?

"A I went around there with myself.

"Q By yourself?

"A Yes, sir.

"Q Was Corene Getter with you when you went around to the Highway Inn?

"A No, sir; I came back on back here where they were.

"Q Where who was?

"A   Corene.

"Q   Now isn't it a fact that you and Corene Getter went around to the Highway Inn together after, you, Gus, and Corene got to Uniontown?

"A   Yes.

"Q   Didn't you tell me that over in my office?

"A   Yes, sir.

"Q   Didn't you tell me that out in the cotton patch?

"A   Yes, sir.

"Q   All right.   Y'all stayed there in that Highway Inn for quite awhile, didn't you?

"A   Yes.

"Q   You had a few drinks?

"A   Yes, sir."

The mode of qualifying mental defectives follows the same rules as those prescribed for determining the capacity of children.   McElroy, Evidence, § 94.01.

However, we pretermit further consideration of the internal reliability vel non of her testimony.   This, because we consider that while the preliminary examination to determine her competence as a witness omitted significant requirements of law, nevertheless, the point is not before us.   This, because defense counsel failed to object to the witness being sworn.

We shall begin by setting out the provisions of Code 1940, T. 7, §§ 439 and 440 which read as follows:

"§ 439.   Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, are incompetent witnesses."

"§ 440.   The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness, or infancy."

Wigmore, Evidence (3rd ed.) § 492, says in part:

"The question being whether the person is trustworthy as a witness, the law now asks whether *in each case* the derangement or defect is such as to make the person highly *untrustworthy as a witness;* it no longer excludes absolutely * * *."

Appended to § 492, Wigmore cites (in fn. 4) Allen v. State, 60 Ala. 19 semble;   Worthington v. Mencer, 96 Ala. 310, 11 So. 72;   Walker v. State, 97 Ala. 85, 12 So. 83;   McKinstry v. Tuscaloosa, 172 Ala. 344, 54 So. 629.

Wigmore, supra, § 497 says:

"What is sufficient in order that the offering party may be put to the necessity of adducing evidence of capacity, and the judge to the necessity of determining the existence of capacity, has not been made entirely clear by decisions.   It may be supposed that a mere *objection raised* and a claim to have a 'voir dire' examination would suffice. * * *"

▮ We believe that the Alabama cases are clear to the effect that, while the trial judge ex mero motu may reject a tendered witness of tender years,[1] nevertheless, he may rely on the adversary process and swear the witness without error if no objection is raised.

Appellant, in arguing for reversal of the court below for admitting the witness, cites McKelton v. State, 88 Ala. 181, 7 So. 38; White v. State, 136 Ala. 58, 34 So. 177; Jones v. State, 145 Ala. 51, 40 So. 947; and Morse v. State, 27 Ala.App. 447, 173 So. 875.

---

1. In Jackson v. State, 239 Ala. 38, 193 So. 417, a minimum age seems to have been laid down:
   "In Wharton's Criminal Evidence (10th Ed.) Vol. 1, Section 366, it is said: 'Four years has been assigned as the minimum age, but after this age the question of admissibility is to be decided by the court.' * * *"

All these cases show either that objection was made when the infant witnesses were first called, or just before the oath was administered.

Pruitt v. State, 232 Ala. 421, 168 So. 149(9) contains a lengthy quotation of the voir dire examination, through an interpreter, of a deaf-mute girl. The girl appreciated the concept of an after life in heaven for those who are good. However, she did not know what became of the bad. The trial judge, over *objection,* admitted the girl as a witness. See also Carter v. State, 63 Ala. 52.

We do not think that our cases call for a religious test in contravention of the Alabama Constitution, § 3, nor of the First Amendment to the Constitution of the United States. Wright v. State, 24 Ala. App. 378, 135 So. 636 (witness was an atheist).

■ The important enquiry is the morality of speaking truthfully. McGuff v. State, 88 Ala. 147, 7 So. 35; Wigmore, supra, §§ 495(2) and 1828; Code 1940, T. 7, §§ 363 and 364.

Appellant, in brief, contends that we should reverse because the swearing of the witness was error plain and reversible, without the need for counsel's objecting.

The trial court, consonant with Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, correctly directed the jury to ignore electrocution as punishment. By like token, § 10 of the Automatic Appeal Act (Act 249, June 24, 1943), had no influence. See Buchanan v. State, 50 Ala.App. 656, 282 So.2d 95 (1973) and Echols v. State, 47 Ala.App. 23, 249 So. 639.

This § 10, supra is the only instance of the Plain Error doctrine in our criminal jurisprudence. Boykin v. Alabama, 395 U.S. 238 at 241, 89 S.Ct. 1709, 25 L.Ed.2d 274 citing Duncan v. State, 278 Ala. 145, 176 So.2d 840.

■ Here we have, as to the mental capacity vel non of the witness, Boone, an unprotected record. While exceptions (except as to the oral charge—Code 1940, T. 7, § 273) have been abolished by Act No. 44, April 1, 1955 [Michie's 1958 Code, T. 7, § 818(1)], objections must still be timely interposed and an adverse ruling had from the trial judge *before* a question is preserved for appellate review. Note Ala.R. C.P. No. 46.

■ Hence, no objection having been made, defense counsel waived any supposed impediment to the witness's capacity to testify. In Belk v. State, 10 Ala.App. 70, 64 So. 515 we find:

"First it is contended that the court erred in permitting the state to examine as a witness in its behalf one Jos. Eros, who had been put under the rule and excluded from the courtroom out of the hearing of the witnesses when delivering their testimony, because of some violation of the rule by the witness. Besides this being a matter in the discretion of the court in which no abuse of discretion is shown, no objection was made by the defendant to the witness' testifying, and no ruling of the court shown to have been invoked with respect thereto, and there is therefore no action of the court presented for review."

Again, alluding to the same principle, Carr v. State, 46 Ala.App. 4, 237 So.2d 116 states:

"Captain Swindall stated on cross examination that this was the first time he had ever participated in a raid on a purported bookmaking establishment; that he would not say he was an expert on what constituted records of bets; that he could not point to a single entry and say whether or not it was the record of a bet. By his own admission he was not qualified to give expert testimony, however, while the record does disclose a colloquy between the court and counsel,

we find no specific objection to the competency of this witness, therefore the matter is not presented for our review."

And we quote in like vein from Greathouse v. State, 47 Ala.App. 71, 250 So.2d 609, where a toxicologist testified as to his opinion as to the cause of death without his expertise being first established. We said inter alia:

"However, no objection was made at the trial to the failure of the State to properly qualify the witness as an expert, and no ruling of the court was invoked. Matters not objected to in trial court cannot be considered for the first time on appeal since a review on appeal is limited to those matters at which rulings are invoked at nisi prius. Smith v. State, 40 Ala.App. 600, 119 So.2d 202; Thompson v. State, 44 Ala.App. 414, 211 So.2d 505; Volunteer State Life Ins. Co. v. Danley, 33 Ala.App. 543, 36 So.2d 123, cert. denied 250 Ala. 702, 36 So.2d 132."

At the risk of didacticism, we cannot too often adjure trial counsel that to remain silent and speculate on a favorable verdict can only put the client behind the eight ball with a nugatory ground for reversal in an appellate court. See Dawson v. State, 47 Ala.App. 293, 253 So.2d 362, Cates, J., dissenting,—"Object till Hell freezes over."

Without an objection we must follow the usual rule of refraining from meddling where the trial judge was not called upon to intervene. McGullion v. State, 50 Ala. App. 55, 276 So.2d 640 reflects gratuitous dictum unnecessary to the decision.

Many times appellate courts do peek beyond the brink to assure that no injustice of mechanical jurisprudence lurks in a stricken record. Relf v. State, 267 Ala. 3, 99 So.2d 216. Thus, we doubt after the opinion of Foster and Bouldin, JJ., dubiter in Pugh v. State, 239 Ala. 329, 194 So. 810 and Thompson v. City of Louisville, 362

U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, that Woodson v. State, 170 Ala. 87, 54 So. 191, can be said to be the law.

■ The appellant also complains that the evidence was insufficient to sustain a conviction. There was no motion to exclude the evidence, the affirmative charge was not requested in writing and no motion for a new trial was made.

The sufficiency of the evidence is therefore not presented for consideration on this appeal. Edwards v. State, 49 Ala.App. 122, 269 So.2d 140.

This, however, is not a case where there is *no* evidence to make out a prima facie case for the prosecution. Rather, here we have testimony to support the indictment and thus justify the verdict. We did not see this witness and hear her talk. We cannot at this distance say that justice has miscarried.

### III

The oral charge contains the following:

"Do not take anything that the District Attorney has said or that the Attorney for the Defendant has said into your considerations in making your decision in this case."

Counsel for defendant took no exception to the oral charge. Code 1940, T. 7, § 273.

■ Moreover, language used in Lane v. State, 85 Ala. 11, 4 So. 730, supports the instant charge. We do not view this statement in context with the whole charge as denying the right to be heard by counsel.

We have carefully examined the record under the requisites of Code 1940, T. 15, § 389 and consider that the judgment below should be

Affirmed.

All the Judges concur.