The defendant was indicted for the first degree murder of his son, Roy Allen Smith, Jr. A jury convicted him of murder in the second degree and set punishment at twenty years' imprisonment.
 I
The defendant maintains that the only eyewitness to the homicide, Elizabeth Ann Smith, was so mentally defective as to be incompetent to testify as a witness.
Prior to the actual trial of the case, the trial court conducted a hearing to determine Miss Smith's competency to testify as a witness. Miss Smith was twenty years. old and the daughter of the defendant. The trial judge questioned Miss Smith and ascertained that she knew what it was to tell the truth and that she must tell the truth when placed under oath.
Defense counsel did not cross examine Miss Smith but called two expert and one lay witness to establish her alleged incompetency. That testimony revealed that in 1975 Miss Smith had a full scale I.Q. of 51, that she was "moderately mentally retarded", had a "low level ability to perceive details", had difficulty in accurately relating what she had observed, and was easily influenced especially by her mother.
At the conclusion of the hearing, the trial judge ruled that Miss Smith was competent to testify. *Page 347 
 "Let the record show that this court, after observing the demeanor of the proffered or expectant witness Elizabeth Ann Smith, and after listening to her responses to questions propounded to her by the Court respecting her understanding of the nature of an oath, rules that she is prima facie competent; the weight and credibility of her testimony to go to the jury for whatever weight they see fit to attach to it."
The applicable rule of law is concisely stated in C. Gamble,McElroy's Alabama Evidence, § 94.01 (2) (3rd ed. 1977). This is a revision of the material which was quoted with approval inOrton v. Gay, 285 Ala. 270, 277, 231 So.2d 305 (1970).
 "Alabama statute provides that: `Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, are incompetent witnesses.' A person is disqualified to be a witness if, by reason of mental derangement, he lacked the capacity to observe the matter to be testified about, if he now lacks capacity to narrate such matter or if he does not understand that it is his moral duty to speak the truth.
 "The fact that a person's mental disorder renders him incapable of managing his own affairs, that he is under guardianship or that he, by reason of the mental disorder, is kept confined in a hospital for the mentally ill, does not necessarily disqualify him to be a witness. It has been said that it is no objection to the competency of a witness that he may be subject to fits of derangement if, at the time he is offered, it appears that he is sane. "Whether a person's affliction with a mental defect is such as to incapacitate him to be a witness is a matter to be determined by the trial judge. In fact, he is specifically charged with this duty by a statute which states: `The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness or infancy.' It has been held that a trial judge's ruling on this question stands on appeal unless there is strong evidence of an abuse of sound discretion."
(footnotes omitted)
One of the oldest and perhaps the best statements of the rule is found in Worthington Co. v. Mencer, 96 Ala. 310, 314,11 So. 72, 73 (1892).
 "`The general rule, therefore, is that a lunatic or a person affected with insanity, is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself, and any competent witness who can speak to the nature and extent of his insanity.' District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618."
See also McKinstry v. City of Tuscaloosa, 172 Ala. 344, 350,54 So. 629 (1911), where the witness's competency was upheld although the witness was assailed as a "moral imbecile" incapable of separating truth from falsehood and an expert testified in support of this allegation.
In each particular case where the competency of a witness is challenged the fundamental question is whether "the derangement or defect is such as to make the person highly untrustworthy as a witness". 2 Wigmore, Evidence § 492 at p. 698 (Chadbourn rev. 1979). It is generally accepted that "the derangement or defect, in order to disqualify, must be such as substantially negatives trustworthiness upon the specific subject of the testimony". 2 Wigmore, § 492 at 699. In order "to exclude a witness on the ground of mental or moral incapacity, the existence of the incapacity must be made to appear". 2 Wigmore, § 497 at 703, citing Puckett v. State, 213 Ala. 383,105 So. 211 (1925); Conner v. State, 52 Ala. App. 82, 86, 289 So.2d 650, cert. denied, 292 Ala. 716, 289 So.2d 656 (1974). "A presumption of competency attends a witness." Hutcherson v.State, 40 Ala. App. 77, 79, 108 So.2d 177, 178 (1958). *Page 348 
The burden of proving the incompetency of a witness is upon the party objecting. Birmingham Ry., Light Power Co. v. Jung,161 Ala. 461, 49 So. 434 (1909). "The discretion of a trial judge as to the competency of a witness is of a well nigh irrevisable nature." Trammell v. State, 53 Ala. App. 246, 247,298 So.2d 666, 667 (1974).
In its ruling that Miss Smith was competent to testify, we find no abuse of the discretion of the trial judge. The particular defects in the witness's capacity to observe and remember went to her credibility and were matters for the jury.
 II
The State's evidence shows that the defendant and his wife were having an argument — "fussing and fighting". The defendant left the room and "got a gun". The defendant was mad and said "Well, I'll just kill all of you" when his wife told him that she was going to leave and take the children with her. The weapon fired killing Roy Allen Smith, Jr. The defendant cried, "Oh, my God, I've killed my baby", and said "Don't call the law because I'm afraid they might come and lock me up". He went outside the house carrying the shotgun and "went on down in the woods".
Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. The defendant did not have to have the actual intent to kill his son to be guilty of second degree murder.
 "It is not necessary that there was an intent to kill to constitute murder in the second degree. It is sufficient if the defendant voluntarily set in motion or applied an unlawful force from which death ensued, however free the action may be from actual purpose to kill."
 Smith v. State, 154 Ala. 31, 34, 45 So. 626, 627
(1908).
We have searched the record for error prejudicial to the defendant and, finding none, affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.