HARRIS, Judge.
The appellant, Larry Jones, was indicted by the Houston County Grand Jury for the offense of burglary in the second degree, in violation of § 13A-7-6 Code of Alabama 1975. Appellant was arraigned on February 24,1982, where he entered a plea of not guilty and not guilty by reason of insanity. After requesting a sanity determination, appellant was examined at the Taylor Hardin Medical Facility in Tuscaloosa, Alabama, and was determined competent to stand trial. He was tried before a jury on September 28, 1982, and was found guilty as charged. He was sentenced to eight years in the state penitentiary.
One of the issues appellant raises on appeal is that the state failed to present a prima facie case of second degree burglary. The crime appellant was charged with in this case was that he did knowingly enter or remain unlawfully in a building of Bulah Pyne with intent to commit the felony of robbery in the first degree, and, while he was effecting entry or while in said building or in immediate flight therefrom, he was armed with a deadly weapon, to-wit: a knife.
The state produced evidence showing that Bulah Pyne, age sixty-five and a resident of *1339 Cottonwood, Alabama, was asleep in her house on February 2, 1982. Around 2:00 a.m., she was awakened when the appellant pushed open her bedroom door. Appellant did not have permission to be in the house. Mrs. Pyne testified that appellant told her to “lie still,” and then he got into bed with her and started “hugging and kissing” her. Mrs. Pyne stated that appellant held both of her hands, and she told appellant to “turn her aloose.” Appellant refused to do so, and the two of them “just laid still.” Before appellant left her house later that morning, Mrs. Pyne stated that he demanded money while holding a butcher knife in his hand. She stated that she did not give him any money. Mrs. Pyne further stated that appellant threatened to kill her if she did not “drop” this case.
Grover Guy, Mrs. Pyne’s brother, testified that in the early morning of February 2, 1982, Mrs. Pyne drove to his house and told him that appellant had been in her house. Mr. Guy stated that he went to her house and found that the lock on one of the doors had been pried open and that her bed was in shambles. He noticed at that time that his sister’s arms and face were badly bruised.
Myrtle Jones, appellant’s mother, testified that on the night of February 1, 1982, appellant went to bed at around 10 o’clock, and that appellant was at her house at 5:30 a.m. the next day. She stated that her house is about three miles from Mrs. Pyne’s house.
While appellant admits in his brief that he was unlawfully in Mrs. Pyne’s house, it is his contention that the evidence failed to prove that he intended to rob Mrs. Pyne as set out in the indictment. We do not agree. The evidence shows that, while appellant was in the house, Mrs. Pyne saw appellant holding a butcher knife as he demanded . money. Even though Mrs. Pyne never gave appellant any money, the holding of the butcher knife where she could see it as he asked for her money was sufficient to show that appellant had the necessary intent to rob Mrs. Pyne. Ala.Code § 13A-8-41 (1975).
Appellant further contends that the pros-ecutrix, due to a mental defect, was incompetent to testify as a witness in this case. Before trial, a hearing was conducted outside the presence of the jury to determine Mrs. Pyne’s competency to testify as a witness. Evidence was presented showing that on November 22, 1977, several years prior to the burglary, Mrs. Pyne had been declared non compos mentis by the Houston County Probate Court and was committed to Searcy State Mental Hospital. Mrs. Pyne was released on a six-months trial basis on March 15,1978, and was discharged from Searcy Hospital on September 25, 1978. She was subsequently hospitalized at Charter Woods Hospital in Dothan, Alabama, on May 14, 1981. After undergoing successful treatment, Mrs. Pyne was discharged from Charter Woods on June 5, 1981.
Evidence was also produced showing that in a previous trial of this case, Mrs. Pyne testified that appellant had raped her after he entered her house. However, since such was not the case, a mistrial had been granted.
Mrs. Pyne was questioned by the trial court as to whether she knew the meaning of taking an oath. Her response was that it meant “to tell the truth.” She further stated that she could read, but could not write, and had gone to school through the ninth grade.
It is appellant’s contention that Mrs. Pyne’s untruthful statement made at the previous trial of this case that appellant had raped her coupled with her history of mental illness demonstrates the untrustworthiness of her testimony, and, hence, its inadmissibility.
This court in Smith v. State, 380 So.2d 345 (Ala.Cr.App.1980), reaffirming the general rule concerning the competency of witnesses, held:
“ ‘... The fact that a person’s mental disorder renders him incapable of managing his own affairs, that he is under guardianship or that he, by reason of the mental disorder, is kept confined in a *1340 hospital for the mentally ill, does not necessarily disqualify him to be a witness.
[[Image here]]
“ ‘The general rule, therefore, is that a lunatic or a person affected with insanity, is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be. determined by the court, upon examination of the party himself, and any competent witness who can speak to the nature and extent of his insanity.’ District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618.”
The fundamental question in cases where the competency of a witness is challenged is whether “the derangement or defect is such as to make the person highly untrustworthy as a witness.” Smith, supra. Whether a person’s affliction with a mental defect is such as to incapacitate him to be a witness is a matter to be determined by the trial judge. C. Gamble, McElroy’s Alabama Evidence, § 94.01(2) (3rd ed. 1977). A presumption of competency attends a witness, and the burden of proving incompetency is upon the party objecting. Chambers v. State, 418 So.2d 948 (Ala.Cr.App.1982). “The discretion of a trial judge as to the competency of a witness is of a well nigh irrevisable nature.” Chambers, supra; Smith, supra.
After a careful consideration of the record in this regard, we find that the trial court did not abuse its discretion in determining that the prosecutrix was competent to testify.
Appellant complains of two instances in the state’s closing argument wherein the prosecution made prejudicial comments to the jury.
In the first instance, the prosecution referred to appellant as the “terror of Cottonwood.” Even though we have held that such argument is highly improper, Liner v. State, 350 So.2d 760 (Ala.Cr.App.1977), we find no reversible error since appellant’s objection was promptly sustained and the jury was instructed on what they were to consider.
In the second instance, the trial court sustained appellant’s objection. Appellant did not move the trial court to exclude the comment or instruct the jury to disregard it. Consequently, no adverse ruling exists from which the appellant may appeal. Yates v. State, 390 So.2d 32 (Ala.Cr.App.1980).
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.