(135 So. 636)

## WRIGHT v. STATE.
### 6 Div. 967.

Court of Appeals of Alabama.
March 19, 1931.

Rehearing Granted May 26, 1931.
Rehearing Denied June 23, 1931.

Windham & Countryman, of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

John P. Kohn, Jr., of Montgomery, amicus curiæ.

### SAMFORD, J.

The one question of merit presented by this record is as to the admission in evidence of the dying declaration of deceased.

The usual predicate as to a consciousness of impending death was laid and the subject-matter of the statement was admissible. Humber v. State, 21 Ala. App. 378, 108 So. 646.

The defendant, however, by proper questions propounded on cross-examination and by a motion to exclude the dying declaration, after it had been proven by undisputed testimony that deceased did not believe in God, did not believe in a Supreme Being, did not believe there was a place to reward the faithful or punish the wicked, raises the question of the competency of the deceased to make such dying declarations as will be admissible in evidence.

While dying declarations are admissible in evidence as an exception to the general rule against hearsay evidence, they should only be admitted and weighed with great care. They are wanting in those safeguards usually attending the oral examination of witnesses, such as cross-examinations, manner and temper of the witness, and are usually brought into court through the testimony of those who have watched by the bedside of a dying friend or relative and who naturally are biased as against the slayer. Shell v. State, 88 Ala. 17, 7 So. 40. It is not, therefore, the testimony of a witness under oath, but the recital of a statement made under the solemn force of impending death by and through which, according to the belief of nearly, if not quite all of the people of the world, the immortal part of man is separated from the mortal and the immortal goes to stand face to face with a Judge whose decrees are based upon full knowledge and perfect justice. A belief in God—a Supreme Being, a Just and an All Wise Judge—whose decrees are final and eternal and who rewards the truth and punishes the untrue, would render a dying statement of much value as evidence, but coming from one whose mind is filled with resentment against a recent adversary and who believes that the grave ends it all and that when he sleeps it will be with the rock and the clod, there is nothing to take the place of an oath and personal examination, with the legal tests usual in such cases. Such dying statement with proper predicate stands in the same category as the testimony of a living witness on the stand and may be impeached in the same manner and for the same causes. Marshall v. State, 219 Ala. 83, 121 So. 72, 63 A. L. R. 560.

The question then presented is: Is a witness competent to testify who does not believe in an Omniscient Supreme Being as the rewarder of truth and the avenger of falsehood? By the common law no particular form of religious belief was insisted on as the test of competency, but it was required that there should be a belief in an Omniscient Supreme Being exercising the power to reward truth and punish falsehood. 5 Jones on Ev. (2d Ed.) §§ 2089–2091. While this rule has been abrogated in many states, by statutes and decisions, the common-law rule still obtains in Alabama. Code 1923, § 14. The rule of the common law is stated by Lord Chief Justice Willis in Omychund v. Barker, 1 Atk. 21, and quoted with approval by Mr. Justice Foster in Marshall v. State, 219 Ala. 83, 121 So. 72–75, 63 A. L. R. 560. With the pronouncement in the Marshall Case, supra, this court is in accord, holding as it does that those persons are competent to testify who believe in a Supreme Being controlling rewards and punishments. We are, therefore, not in conflict with that decision when we hold that, an Atheist, defined by Webster's Dictionary as: "(1) One who disbelieves or denies the existence of a God or Supreme intelligent Being. (2) A Godless person. One who lives as if there was no God," is not a competent witness in any court of this state, where an oath is required.

The foregoing is not in conflict with section 3 of the Constitution of 1901, which provides: "That no religious test shall be required as a qualification to any office or public trust under this state; and that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles." The whole fabric of this nation from its inception to the present

time is founded on a belief in a Supreme Being whose guiding hand is recognized and invoked in our most solemn governmental pronouncements. Beginning with our Declaration of Independence, which is the foundation of our liberties, the framers evidenced this belief in the following phrases: "The separate and equal station to which the laws of nature and of nature's God entitle them;" and "that all men are created equal; that they are endowed by their Creator with certain unalienable rights," and ending this remarkable document with a full faith in God as follows: "And, for the support of this declaration, with a firm reliance on the protection of Divine Providence." Coming to our own state, every Constitution ever adopted by the people of Alabama was framed and adopted with a full recognition of the powers of a Supreme Being with powers to control and direct the destinies of men. This recognition is given voice in the Preamble to the Constitution of 1901 in the following language: "Invoking the favor and guidance of Almighty God, do ordain and establish the following Constitution." Every statute ever passed by the Legislature of this state relating to the introduction of evidence in courts of justice has been enacted in full recognition of a faith in a Supreme Being and there is no place in our whole governmental structure for a belief which ties men to the rocks and clods and places him on a level with the beasts of the field. Without a belief in a Supreme Being there can be no legal oath; without a legal oath a witness is not competent to testify in our courts.

The rulings of the trial court were not in accord with the above, and for the errors pointed out the judgment is reversed and the cause is remanded.

Reversed and remanded.

### On Rehearing.

RICE, J.

Section 7655 of the Code of Alabama of 1923 is in the following language: *"Oath or Affirmation.*—The sanction of an oath, or affirmation equivalent thereto, is necessary to the reception of any oral testimony. The court may frame such affirmation *according to the religious faith of the witness."* (Italics supplied by us.)

And this court has said (Pilcher v. State, 16 Ala. App. 237, 77 So. 75, 76), with the approval of the Supreme Court (Ex parte State [Pilcher v. State], 201 Ala. 697, 77 So. 1001): "The ordinary rules that are invoked for the determination of the admissibility of evidence generally or of the competency of the witness testifying, are applicable to the admissibility of dying declarations and to the competency of the declarant at the time he made the declarations."

Webster's New International Dictionary gives as definitions of the word "affirmation," pertinently, these which we accept: "3. That which is asserted; an assertion; a positive statement; an averment; as, an affirmation by the vendor of title to property sold, or of its quality." And "4. Law. A solemn declaration made under the penalties of perjury, by a person who conscientiously declines taking an oath. This is in law equivalent to an oath."

An "oath," such as is mentioned in Code 1923, § 7655, cannot be made by one who does not believe in God, or, speaking very reverently some legal equivalent. Webster's New International Dictionary; Words and Phrases (1904) First Series, vol. 5, p. 4871. But we find, and know of, no such restriction upon the making of an "affirmation," which may be substituted for an "oath." Code 1923, § 7655, supra.

And, if one may testify, orally, in open court, without first taking an "oath"—when he objects to taking same—by substituting an "affirmation," which is no more than a "positive statement," under the penalties of perjury, and "the ordinary rules that are invoked for the determination of the admissibility of evidence generally, or of the competency of the witness testifying, are applicable to the admissibility of dying declarations, and to the competency of the declarant at the time he made the declarations," I do not conceive that it is the intention of our laws to, as would be the case here, deprive the state of the only available testimony tending to show the crime alleged to have been committed—the dying declaration of the deceased—because the defendant was allowed to testify, without objection, and without being disputed, that the deceased "did not believe in God; did not believe in a Supreme Being; did not believe there was a place to reward the faithful or punish the wicked."

I pretermit any discussion of the propriety, vel non, of allowing the witness to *give* such testimony, as for it being but her opinion, unauthorized, or conclusion, because, forsooth, such testimony was, here, not objected to, and, anyway, as I see it, the testimony did *not* render the dying declaration inadmissible in evidence.

I do not subscribe to the view that "there is no place in our whole governmental structure for a belief which ties men to the rocks and clods and places him on a level with the beasts of the field," asserted by my brother SAMFORD.

It is, rather, my opinion that ours is "the land of the free, and the home of the brave"; and that though to say "there is no God," both in Scripture and in common knowledge, proves one a fool, and may, for all I know, tie him "to the rocks and clods," yet it does not, and should not, deprive that one of his heritage as

a citizen, nor of his standing as one of the "free" and one of the "brave." Such would be the effect of the holding announced in the opinion heretofore handed down in this case.

Indeed, the said holding seems to me to be squarely in defiance of that provision of section 3 of the Constitution of Alabama of 1901, quoted in the opinion by Judge SAMFORD, to wit: "That no religious test shall be required as a qualification to any office or public trust under this state; and that *the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles.*" (Italics supplied by us.)

It is entirely superfluous for me to say that I, too, am "in accord" with the "pronouncement in the Marshall Case" (Marshall v. State, 219 Ala. 83, 121 So. 72, 75, 63 A. L. R. 560, alluded to by my brother SAMFORD. Not only do I have no disposition to question its soundness, but we are bound by it. Code 1923, § 7318.

But as I read the opinion in that case, it is *not* an authority for the "pronouncement" by this court in the opinion heretofore promulgated.

True enough, as pointed out by Mr. Justice Foster, in the opinion in that case, "by the common law * * * as the test of competency [of a witness to testify, or of the admissibility in evidence of his dying declaration] * * * there should be a belief [by the witness or declarant] in an omniscient Supreme Being as the rewarder of truth and the avenger of falsehood." But the said learned justice is careful to state, in that regard, that "our Constitution, § 3 [quoted hereinabove, we interpolate], does not seem to have been considered in connection with this principle, and we find that the state of the record in this case does not require a decision of its effect on the common-law rule."

For my part, I am forced to declare that it is my opinion that the said section 3 of the Constitution of 1901 completely abrogates the common-law rule referred to; and that, to give effect to the quoted and italicized portions, hereinabove, of the said section 3, we ought to hold that, under the other prerequisite circumstances, pointed out in the opinion by Judge SAMFORD, it was not error to admit testimony as to the dying declaration involved in this case.

At the risk of being tedious, I would like to add that a similar view is entertained by the Court of Appeals of Kentucky, as indicated in the decision and opinion in the case of Bush v. Commonwealth, 80 Ky. 244. In that case that court, speaking directly in answer to this question, "Does the want of religious belief incapacitate a witness, and can that belief be inquired into in any way?" made the following utterances, to wit:

"It is admitted that the modern common law requires, as a condition precedent to the admission of the testimony of a witness, that he believe in a supreme being who will punish, either here or hereafter, one who swears falsely. * * * The unquestioned tendency of modern legislation, as well as of judicial interpretation, is to the exclusion of inquiry into religious belief as a test of the competency of a witness * * * in the administration of the criminal and the penal law, the rules of evidence recognized at common law are still in force, unless changed or abrogated by the organic law as expressed in the constitution.

"Upon the point under consideration, we are of the opinion that the constitution changes the common law rule, and makes competent as witnesses all persons so far as any religious test is concerned. * * *

"The sixth section is as follows: 'That the civil rights, privileges, or capacities of any citizen shall in nowise be diminished or enlarged on account of his religion.'

"The obvious meaning of this is, that whatever civil rights, civil privileges, or civil capacities belong to or are enjoyed by the citizens generally, shall not be taken from or denied to any citizen on account of his opinions in regard to religious matters. It is a declaration of an absolute equality, which is violated when one class of citizens is held to have the civil capacity to testify in a court of justice because they entertain a certain opinion in regard to religion, while another class is denied to possess that capacity because they do not conform to the prescribed belief. Free governments deal with the acts of the citizen and not with his thoughts. To proscribe or punish for religious or political opinions is of the essence of despotism. To apply the rule insisted upon would be to make a religious test, which is contrary as well to the letter as to the spirit of the constitution. If the test can be applied in this case, it may be applied in any, for, independent of this provision of the constitution, there is nothing to prevent the legislature from passing any law they think proper prescribing particular denominational standards of belief as a test of competency to give evidence. In that case, any Christian denomination being in the ascendency in the legislature might pass a law depriving all other Christian denominations of the capacity to testify as witnesses; and, on the other hand, if it should ever happen that Atheist or Deist were in a like ascendency in the legislature, there would be nothing to prevent them from proscribing all Christians in the same way. And further, the enforcement of the rule contended for might present, as suggested by Judge Scott in Perry's Case, 3 Grat. [44 Va.] 632, a case in which one believing in the prescribed formula would be sentenced to death by an Atheist circuit judge, the sentence and judgment affirmed by an Atheist appellate court, and de-

nied pardon by an Atheist governor; for in no case are any of the officers required to conform to any belief as a condition precedent to the holding of an office and to the exercise of its functions. If such a case should occur in which a Christian man should suffer death, though innocent, because an Atheist was denied the capacity to testify in his behalf, every citizen would denounce such a rule thus applied as absurdly unjust, oppressive, and in violation of the spirit of our institutions. * * * The opinion in the Perry Case, above referred to, reaches, in construing a similar provision in the Virginia constitution, the conclusion at which we have arrived. We think that this provision of the constitution not only permits persons to testify without regard to religious belief or disbelief, but that it was intended to prevent any inquiry into that belief for the purpose of affecting credibility. It places the Atheist, in this regard, on the same footing as any other witness, and leaves the question as to credibility to be inquired into in the same way."

I do not care to go so far, here, as to say that I agree with the Court of Appeals of Kentucky, in the above, in saying that "it [the constitutional provision referred to,— which was in its effect the same as section 3 of our Constitution of 1901] was intended to prevent any inquiry into that belief [religious belief—I interpolate] for the purpose of affecting credibility." Though they may be right about that.

But so far as concerns the question with which our opinion deals, I do think the reasoning, and the holding in Bush v. Commonwealth, supra, logical and sound, and I adopt the language therein used, in that regard, as expressing my views.

The Supreme Court of Illinois, it seems, has a similar view, as indicated by the seventh headnote (fairly expressive, I think, of the holding in the opinion) to the report of the case of Hronek v. People in 24 N. E. 861, 862 (134 Ill. 139, 8 L. R. A. 837, 23 Am. St. Rep. 652), which headnote I quote, to wit: "Under Const. Ill. art. 2, § 3, which provides that 'no person shall be denied any civil or political right, privilege, or capacity on account of his religious opinions, but the liberty of conscience hereby secured shall not be construed to dispense with oaths or affirmations,' the absence of belief in his accountability to the Deity does not disqualify a citizen from testifying in a court of justice."

So I merely repeat, the common-law rule which would have rendered incompetent the dying declaration admitted in evidence in this case has been abrogated by the provisions hereinabove quoted, of section 3 of our Constitution of 1901, and, in the light of said section 3, and of Code of 1923, § 7655, it is my opinion that the state's application for rehearing should be granted, the order of reversal set aside, and the judgment of conviction affirmed.

BRICKEN, P. J.

In expressing my views upon the principal point of decision involved, I shall refrain from an extended discussion. Certainly, I shall indulge no criticisms as to the numerous expressions in each of the foregoing opinions of my brothers, which do not meet with my approval, and content myself by merely stating in my opinion section 3 of the 1901 Constitution of Alabama is conclusive of the point involved. There, it is expressly provided " * * * that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles."

I concur in the conclusion that the rehearing by the state should be granted and that the judgment of conviction from which this appeal was taken be affirmed.

SAMFORD, J.

The original opinion in this case was concurred in by all the judges of this court. On rehearing, BRICKEN, P. J., and RICE, J., have changed their views on the question of the admission of the dying declaration, and BRICKEN limits his concurrence in the conclusion reached by RICE, J., to the opinion that section 3 of the Constitution does away with the necessity of an oath by any one who does not believe in a Supreme Being or who is an Atheist, and to that extent at least, section 7654, Code 1923, which was brought forward from six preceding Codes, is void and of no effect. I dismiss the argument of the Presiding Judge with the remark that if section 7654, supra, is void as to Atheist it must also be void as to believers in a Supreme Being, and therefore the requirement of an oath with respect to testimony is abrogated. I hardly think that one of the fundamental principles of evidence that has existed in all civilized nations from the dawn of history can be so easily cast aside. For a full discussion of the subject, see the leading case in English Jurisprudence, Omychund v. Barker, 1 Atkyns, 21 et seq.; 1 Greenleaf, Ev. par. 368 (16th Ed.); 1 Stark, Ev. 22.

Does section 3 of the Constitution affect the question here under consideration, without which, it is admitted by both of my brothers, an Atheist is not qualified to take an oath? Section 3 of the Constitution presupposes a religious belief, and every reference or guaranty under that section relates to "religion," which is defined by Webster's Dictionary as: "1. The outward act or form by which men indicate their recognition of the existence of a God or of gods having power over their destiny, to whom obedience, serv-

ice, and honor are due; the feeling or expression of human love, fear, or awe of some superhuman and overruling power, whether by profession of belief, by observance of rites and ceremonies, or by the conduct of life; a system of faith and worship; a manifestation of piety; as, ethical religions; monotheistic religions; natural religion; revealed religion; the religion of idol worshippers. 2. Specif., conformity in faith and life to the precepts inculcated in the Bible, respecting conduct of life and duty toward God and man; the Christian faith and practice. 3. A monastic or religious order subject to a regulated mode of life; more broadly, the religious state." I fail to find any guaranty in the section for an Atheist who does not believe in a God and has no religious beliefs. With the Constitution as it is and the statute as it is Simpson, J., wrote in Parker v. State, 165 Ala. 1–8, 51 So. 260, 262: "Dying declarations are admitted upon the theory that the consciousness of approaching death dispels from the mind all motive for making a false statement, in view of the fact that the party recognizes the fact *that he shall soon appear in the presence of his Maker.*" (Italics mine.) Somerville, J. (the elder), quoted Greenleaf with approval in Kennedy v. State, 85 Ala. 327, 5 So. 300, 302, where he says: "A situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by a positive oath in a court of justice." Rice, J., in McHugh v. State, 31 Ala. 317, speaking of a dying declaration: "The law deems [dying declarations] equivalent to a sworn obligation." And Mr. Greenleaf, whom all judges in this state hold in high esteem, says: "Without this belief (In a Supreme Being) the person cannot be subject to that sanction, which the law deems an indispensable test of truth."

I am taken somewhat to task by my brother RICE for saying in the original opinion: "There is no place in our whole governmental structure for a belief which ties men to the rocks and clods and places him on a level with the beasts of the field." I repeat that statement with such emphasis as I may give it. This government was formed by men who believed in a Supreme Being and was builded for men and women who believe in an immortality after death, whether Christian, Jew, or Pagan. Not only, as was pointed out in the original opinion, does the fundamental law of both state and nation recognize this, but every official act from the President of the United States to the humblest constable in the land is performed under a solemn official oath recognizing the Deity. Both Houses of Congress and both Houses of our Legislature are opened each day with a petition for divine guidance. The Chief Justices of the state and nation and every justice on every court performs his duty under an oath which recognizes a Supreme Being, and every federal court is opened with the plea: "God save the United States and this honorable Court." Not that we have a national or a state religion, but in striving for the highest in life and in company with all the civilized peoples of all ages we believe in man's immortality. Therefore, I hold that the terms of section 3 of the Constitution cannot be extended so as to admit of testimony by a witness who does not believe in a Supreme Being.

In the opinion of RICE, J., I find this statement: "An 'oath,' such as is mentioned in Code 1923, § 7655, cannot be made, by one who does not believe in God, or, speaking very reverently, 'some legal equivalent. * * *. But we find, and know of no such restriction upon the making of an 'affirmation,' which may be substituted for an 'oath.'" My brother contents himself with some abbreviated definition from Webster's Dictionary and then proceeds to apply his modified rule to dying declarations, so as to except Atheist from the general rules of evidence. I do not find it so in the law books.

Mr. Greenleaf, vol. 1 (16th Ed.) p. 504, § 364b, says: "And if, being a Christian, he has conscientious scruples against taking an oath in the usual form he will be allowed to make a solemn religious asseveration, involving a like appeal to God for the truth of his testimony in any mode which he shall declare to be binding on his conscience." The adoption of an "affirmation" as a substitute for an oath was adopted, not as a relaxation of the rule requiring a belief in a Supreme Being, but in recognition of those who, believing, conscientiously believe also that the divine command is to, "Swear not at all." This class, which includes Quakers and the like, are allowed to make affirmation, which is: "A solemn religious asseveration in the nature of an oath." 1 Atk. 21–46; Cowp. 340, 389; 1 Leach, Cr. Cases 64; Vail v. Nickerson, 6 Mass. 262; Com. v. Buzzell, 16 Pick. (Mass.) 153. The definition given in Webster's Dictionary, as applied to the law, is: "A solemn declaration made under the penalties of perjury by a person who conscientiously declines taking an oath." It is universally held by all of the authorities cited and collated in Words and Phrases, First Series, vol. 5, p. 4872, that "Oath" includes affirmation.

There has been some modification of the common-law rule above stated in a number of the states either by statute or constitutional construction. But, in this state the common-law rule still exists modified only to the extent that the belief in punishment for falsehood may be either here or hereafter. Beeson v. Moore, 132 Ala. 391, 31 So. 456; Blocker, Adm'r, v. Burness, 2 Ala. 354; Porter v. Cotney, 3 Ala. 314.

Referring to the proof, which has been questioned by my brother RICE, I can do no better than to quote from Greenleaf on Ev. § 370: "It should here be observed that defect of religious faith is never presumed. On the contrary, the law presumes that every man brought up in a Christian land, where God is generally acknowledged, does believe in Him, and fear Him. The charity of its judgment is extended alike to all. The burden of proof is not on the party adducing the witness, to prove that he is a believer; but it is on the objecting party, to prove that he is not. Neither does the law presume that any man is a hypocrite. On the contrary, it presumes him to be what he professes himself to be, whether atheist or Christian; and the state of a man's opinions, as well as the sanity of his mind, being once proved, is, as we have already seen, presumed to continue unchanged, until the contrary is shown. The state of his religious belief at the time he is offered as a witness is a fact to be ascertained; and this is presumed to be the common faith of the country, unless the objector can prove that it is not. The ordinary mode of showing this is by evidence of his declarations, previously made to others; the person himself not being interrogated; for the object of interrogating a witness, in these cases, before he is sworn, is not to obtain the knowledge of other facts, but to ascertain from his answers the extent of his capacity, and whether he has sufficient understanding to be sworn."

It is my opinion that the judgment of this court should stand, and that the application for rehearing should be overruled.