The defendant was indicted and convicted for the first degree murder of his wife, Frances Watts Roberson. Sentence was life imprisonment.
 I
The major allegation of error is that five year old Chris Tombrello was incompetent to testify as a witness. *Page 865 
Chris was his mother's youngest child and a stepson to the defendant. He was the only witness to his mother's murder. The trial judge examined Chris to determine his competency to testify.
"THE COURT: Do you go to Sunday School?
 (No reply was made by the witness in answer to the question next above.)
"THE COURT: You don't go to Sunday School?
"A. I don't go to no school.
 "THE COURT: When you lived with your mother and daddy, did you go to Sunday School?
"A. No, sir.
 "THE COURT: Do you know what the truth, to tell the truth, to tell — not to tell the truth — If you don't tell the truth, what do you call it?
"A. A lie.
 "THE COURT: Do you know that if you were to tell a lie — would that be good, or bad?
"A. Bad.
 "THE COURT: What would happen to you, like, if your grandmother knew that you told a lie?
 (No reply was made by the witness in answer to the question next above.)
"THE COURT: Would she say anything to you?
 (No answer was made by the witness in reply to the question next above.)
"THE COURT: Do you tell the truth?
"A. Yes, sir.
 "THE COURT: If you are asked some questions, will you tell us the truth?
"A. Yes, sir.
"THE COURT: You won't tell us any lies, will you?
"A. No, sir.
 "THE COURT: Did anybody ever tell you that if a little boy tells lies what would happen to him?
 "Did they ever tell you anything like you might be punished, or anything like that?
"A. No, sir.
 "THE COURT: All right. I am going to let him testify. I think he is qualified to testify.
 "Of course, the jury will take into consideration his age and his reactions in determining what weight and what credibility to give to his testimony."
* * * * * *
 "Of course, the Court is familiar with the decision that you gentleman have handed the Court, and, out of an attempt to — where there is — may, or may not, be an awareness of good, or bad portions, or a knowledge of what is good and what is bad, and so on, as going to the qualification, or knowledge, or solemnity, of an oath, I have attempted in recent years — it looks like a criteria that so many courts have adopted, to separate it from the religion end of it.
 "So, I am going to question this child further now, in the absence of a jury, because I am not completely satisfied.
"Let me —
"Son, what did you say your name was?
"A. Chris.
"THE COURT: Chris?
"A. Yes, sir.
"THE COURT: Chris, do you know that if you —
 "Do you know what it is if somebody says, `Do you swear to tell the truth'?
"Do you know what that means?
 "If you swear to tell the truth and you don't tell the truth, and you have told me awhile ago that if somebody told a lie that that was bad?
"A. Yes, sir.
 "THE COURT: Well, if you do something bad, whether you tell a lie, or anything else — and I asked you if you got punished — do you know what `punished' means?
"A. No, sir.
 "THE COURT: Do you know what it means to get a whipping?
"A. Yes, sir.
 "THE COURT: If you do something bad, do you get a whipping?
"A. Yes, sir.
"THE COURT: Let me ask you this: *Page 866 
 "If you do something bad, if there is some other type of punishment sometimes, if, like, you don't get a piece of candy, you don't get ice cream, or you don't get a dessert, or something, or maybe you get put to bed early, or don't get to watch television, if you do something bad, is that another way of punishing somebody besides getting a whipping, if you do something bad?
"A. Yes, sir.
 "THE COURT: Have you ever had — when you did something bad, had anything like that, maybe, happen to you, like, maybe, get a whipping, or not permitted to watch television?
"A. I got something to eat, but —
"THE COURT: You got what?
"A. I got something to eat, but —
"THE COURT: You got something to eat, but what?
"A. But I did get a whipping.
"THE COURT: You did get a whipping?
"A. But I did get to watch TV and a dessert.
 "THE COURT: You did get to watch TV and eat a dessert, but you got a whipping, is that right?
"A. Yes, sir.
 "THE COURT: But do you realize that if you swore to tell the truth and you didn't tell the truth, that is, if you lied, that that would be bad, and that is the sort of bad that you get a whipping for?
 "I am not saying I am going to whip you. I just want to know if you understand. I am not going to whip you.
"Do you understand that?
"A. No, sir.
 "THE COURT: All right. If you do something bad, you might get a whipping.
"A. Yes, sir.
 "THE COURT: And if you tell a lie, you see, that is bad?
"A. Yes, sir.
 "THE COURT: But if you tell a lie, might you get a whipping?
"A. Yes, sir.
 "THE COURT: Do you promise me that you will tell the truth to any questions we ask you?
"A. Yes, sir.
 "THE COURT: Gentlemen, I am not going to change my ruling. I said `change it', because I took it back awhile ago so I could question this boy further.
 "The Court is of the opinion that this boy is qualified to testify, and, as I say, his years and his reactions can be, of course, considered by the jury to determine what weight and what credibility to give to his testimony.
 "Of course, that may be argued to the jury at the proper time, but the Court does overrule the objection of the defense to the court permitting this witness to testify.
 "MR. HOOVER (Defense Counsel): Your Honor, I still object to him being qualified, not only on the lack of religious training he appears to have, but due to the seriousness of the case in which he is testifying, the very very tender years involved here, his hesitancy in answering certain questions involving punishment, and the consequences in the failure to tell the truth.
 "We don't feel like he does understand the nature and the solemnity involved in giving his oath.
"THE COURT: All right. Overrule."
At common law the oath was regarded as a "summoning of divine vengeance upon false swearing, whereby when the spectators see the witness standing unharmed they know that the divine judgment has pronounced him to be a truthteller". 6 Wigmore,Evidence § 1816 (Chadbourn Rev. 1976). The oath involved "a belief in a superhuman (and therefore inevitable) retribution to follow false swearing". 6 Wigmore, § 1817. This belief is inherent in the very definition of an oath, Blackburn v. State,71 Ala. 319, 321-322 (1882); Goolsby v. State, 17 Ala. App. 545,546, 86 So. 137 (1920), and was required at common law before a witness could testify under oath. C. Gamble, McElroy's AlabamaEvidence, § 94.02 (1). Under the common law rule the *Page 867 
lack of such religious training and instruction as "excited a hope of future reward to the good and fear of punishment to the wicked" disqualified and rendered one incompetent as a witness.Jones v. State, 145 Ala. 51, 40 So. 947 (1906).
 "By the common law no particular form of religious belief was insisted on as the test of competency, other than that there should be a belief in an omniscient Supreme Being as the rewarder of truth and the avenger of falsehood." Marshall v. State, 219 Ala. 83, 86, 121 So. 72 (1929).
* * * * * *
 "Our Constitution, § 3, does not seem to have been considered in connection with this principle, and we find that the state of the record in this case does not require a decision of its effect on the common-law rule."
Section 3 of the Alabama Constitution of 1901 guarantees that "no preference shall be given by law to any religious sect, society, denomination, or mode of worship" and that the "capacities of any citizen shall not be in any manner affected by his religious principles". The Alabama Supreme Court has not, in formal opinion, decided the effect of this constitutional provision upon the common law rule requiring a belief in a Supreme Being as the avenger of falsehood as the test for the competency of a witness. However, in Wright v.State, 24 Ala. App. 378, 135 So. 636 (1931), the Alabama Court of Appeals considered this very question. There, a majority of the Court (Bricken, P.J., and Rice, J., with Samford, J., dissenting) held that Section 3 of the Constitution "completely abrogates the common-law rule". See 6 Wigmore, Evidence, § 1828 (b) (Chadbourn Rev. 1976). Consequently, testimony from an atheist must be admitted into evidence. Rodgers v. State,42 Ala. App. 660, 177 So.2d 460, cert. denied, 278 Ala. 712,177 So.2d 464 (1965).
Although dicta, this Court in Conner v. State, 52 Ala. App. 82,87, 289 So.2d 650, 654 (1973), cert. denied, 292 Ala. 716,289 So.2d 656 (1974) stated:
 "We do not think that our cases call for a religious test in contravention of the Alabama Constitution, § 3, nor of the First Amendment to the Constitution of the United States. Wright v. State, 24 Ala. App. 378, 135 So. 636 (witness was an atheist).
 "The important enquiry is the morality of speaking truthfully. McGuff v. State, 88 Ala. 147, 7 So. 35; Wigmore, supra, §§ 495 (2) and 1828; Code 1940, T. 7, §§ 363 and 364."[1]
Under Wright, a witness's religious beliefs are immaterial. Consequently, we find that the trial judge did not err in failing to qualify the witness in this regard.
The primary burden of qualifying a witness is upon the trial judge. Defense counsel never made any request that he be permitted to cross examine the youth on his religious beliefs.
 "Whether a child is qualified to take a witness' oath is a matter that is lodged necessarily in the discretion of the trial court because, among other things, the trial court has the opportunity of observing the manner and appearance of the child while being examined, an opportunity which the appellate court does not have." C. Gamble, McElroy's Alabama Evidence, § 94.02 (3) (3rd ed. 1977).
See also Godau v. State, 179 Ala. 27, 60 So. 908 (1913). The record does not show that the witness was disqualified to testify. "(U)pon the objector to competency rests the burden to sustain it." Birmingham Railway L. P. Co. v. Jung, 161 Ala. 461,478, 49 So. 434, 440 (1909). *Page 868 
"The discretion of a trial judge as to the competency of a witness is of a well nigh irrevisable nature." Trammell v.State, 53 Ala. App. 246, 247, 298 So.2d 666, 667 (1974). It is only in strong cases that the ruling of the trial court admitting the testimony of a witness should be reversed. Beasonv. State, 72 Ala. 191 (1882).
From the record we do not think that we are authorized to say that the trial judge committed error in permitting witness Chris Tombrello to testify. As in Hacker v. State, 31 Ala. App. 249,250, 15 So.2d 336, 337, cert. denied, 244 Ala. 649,15 So.2d 339 (1943), "(w)e are of the opinion [that] if any doubt of the correctness of said ruling prevailed or existed, all such doubt was fully dissipated and rendered innocuous by the straightforward manner in which this child of tender years gave (his) testimony as a witness."
 II
The defendant contends that the trial court erred by not allowing defense counsel to question the jury venire. From the record:
 "MR. DAVENPORT (Defense Counsel): Would you all agree with me that, in fact, because we have a fine police department and a court system of the type that we have, that we should hold our police to the very highest standards when they are investigating a case?
"THE COURT: Well, I sustain the objection to that."
* * * * * *
 "MR. DAVENPORT: Is there anyone here who would demand Joe Roberson to prove anything to him before they would allow Joe Roberson to be found not guilty?
 "THE COURT: I sustain the objection to that question, and I instruct you that I have already instructed counsel on both sides that I would not allow counsel to ask any questions concerning anticipated constructions, or theories, of law to the jury, but that I would do that, myself, and the Court feels that the Court's instructions are adequate."
* * * * * *
 "MR. DAVENPORT: Is there anyone here who would tend to believe a young child more than any other witness?
 "If the child, who were testifying in the case, would prove to be confused —
"MR. BLACK (Deputy District Attorney): I object.
 "THE COURT: I am going to sustain the objection. That is not proper for voir dire, in my opinion. So, I sustain the objection to it."
Under the principles stated in Radford v. State, 348 So.2d 880,884-885 (Ala.Cr.App. 1977), and Clark v. State, 294 Ala. 493,318 So.2d 822 (1975), it appears that the questions asked encroached upon the oral charge of the trial judge. Therefore the judge did not abuse his discretion in sustaining the objections.
We have searched the record on appeal as required by law. Finding no error, we affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.
[1] In Rogers v. State, 264 Ala. 500, 88 So.2d 685 (1965), a nine year old witness stated that he knew what it meant to tell the truth, that he was going to tell the truth, and that "little boys who tell lies — go to hell". Although the issue we face was not presented in Rogers, the Alabama Supreme Court noted:
 "The trial court properly ruled the witness sufficiently qualified. The foregoing indicated a knowledge on the part of the witness that he knew what it meant to tell the truth and knew what telling the truth was and that if he did not tell the truth, he would be punished. This suffices to satisfy the rule. Noble v. State, 253 Ala. 519, 45 So.2d 857."