Tony Nodd was convicted for the unlawful possession of cocaine in violation of Ala. Code 1975, § 20-2-70. The sentence of five years' imprisonment was split, with the defendant to serve six months in a jail-like institution and the remainder on formal probation. Three issues are raised by Nodd on this appeal from that conviction.
 I
Nodd maintains that reversible error was committed when the trial judge ordered a severance of his case from that of a co-defendant on the day of trial.
In May of 1987, Nodd and his companion, Kennedy Charles Osborn, were arrested for a violation of Alabama's Controlled Substances Act. They were separately indicted. On May 6, 1988, the trial judge granted the State's motion and consolidated the two cases. Trial began on May 18, 1988. Before the jury was selected, the trial judge severed the two cases, over Nodd's objection, based on the fact that co-defendant Osborn did not appear for trial. The trial continued and Nodd was convicted. Then, Osborn pleaded guilty in June of 1988. *Page 141 
A trial court should order a severance of defendants or grant some other relief whenever it finds that "a defendant or the state may be prejudiced to the extent that a fair trial cannot be afforded." Rule 15.4(d), A.R.Cr.P.Temp.
"[A] severance is not authorized by the rule in the absence of a finding of prejudice to a defendant." Ex parte Speaks,494 So.2d 118, 119 (Ala. 1986). Although the trial judge did not make a specific "finding of prejudice to a defendant" before granting the severance, such a finding is implicit in the court's statement, "[T]he co-defendant did not appear and based upon that the Court has severed him in that he did not appear." The record indicates that the absence of the co-defendant was neither excused nor anticipated.
Rule 15.4(d) authorizes a severance if the trial court finds that any defendant will be prejudiced. The prejudice to co-defendant Osborn from a trial in his absence is clear and obvious. For this reason, we find no error in the granting of the severance. See United States v. Lochan, 674 F.2d 960,967-68 (1st Cir. 1982); Petty v. State, 548 So.2d 632
(Ala.Cr.App. 1989).
 II
The trial court properly denied Nodd's motion to suppress.
On the afternoon of May 2, 1987, Prichard Police Officer Charles Hall was on his way to work. While putting gasoline in his private vehicle, he noticed two males sitting in the back seat of an automobile parked in front of the station. Officer Hall observed these two men passing a hand-rolled cigarette between them and smoking it. He testified that based on his experience as a narcotics officer he suspected the men were smoking marijuana.
Two other males came from inside the station and got into the vehicle which was then driven away. Officer Hall followed and, on his radio, called for backup to stop the vehicle for a possible drug violation.
A marked police unit stopped the vehicle in which the defendant was riding within a short distance from the station. Officer Hall walked up to the vehicle from the passenger side and observed a small paper bag between the front bucket seats. Protruding from the paper bag was a clear plastic bag which contained a green leafy material, which Officer Hall recognized as marijuana. Officer Hall could see this plant material from outside the vehicle "without even leaning over."
Officer Hall ordered the four occupants out of the car and seized the paper bag containing the plastic bag. Cocaine was found in the same bag with the marijuana. When Officer Hall seized the bag, all four men, including the defendant, spontaneously denied ownership and said, "It ain't mine, I don't know where it came from." All four men were placed under arrest for felony possession of cocaine and marijuana.
After the defendant's arrest, Officer David Bruhl searched the defendant before placing him in a patrol car. In frisking the defendant, Officer Bruhl discovered a plastic bag containing 29 squares of foil containing cocaine inside the waistband of the defendant's trousers.
Officer Hall's personal observation of the two men sharing and smoking a handrolled cigarette provided the officer with the reasonable suspicion necessary to justify an investigatory stop of the vehicle in which the men were sitting. Ex parteYeung, 489 So.2d 1106 (Ala. 1986). Cf. State v. Betterton,527 So.2d 743, 745 (Ala.Cr.App. 1986), affirmed, Ex parteBetterton, 527 So.2d 747 (Ala. 1988).
Here, the officer's articulated observations provided the reasonable suspicion of criminal activity necessary to justify the short investigatory stop of the automobile under Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). SeeUnited States v. Hawkins, 811 F.2d 210, 215 (3rd Cir.) cert. denied, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). "Although an experienced officer may not base reasonable suspicion merely on innocent activity, police may infer criminal activity from conduct which seems innocuous to an untrained person." Project: Seventeen Annual Review of CriminalProcedure: United States Supreme Court and Courts *Page 142 of Appeals 1986-1987, 76 Geo.L.Rev. 562-63 (1988).
Here, the vehicle was lawfully stopped and the officer had a legitimate reason for being present when he observed what appeared to be marijuana inside the vehicle. The seizure of the marijuana was justified under the plain view exception to the requirement of a search warrant. Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Shipman v.State, 291 Ala. 484, 282 So.2d 700 (1973); W. LaFave, 3 Searchand Seizure § 7.5(a) (2d ed. 1987).
After the defendant was stopped and the marijuana had been observed inside the vehicle, the officer's reasonable suspicion to investigate ripened into probable cause to arrest. The defendant's arrest was proper because it was based on probable cause. The search of the defendant and the seizure of the cocaine from his person were proper because it was incident to his lawful arrest. State v. Calhoun, 502 So.2d 808, 815 (Ala. 1986); Ex parte Hurn, 92 Ala. 102, 9 So. 515 (1891).
 III
The defendant contends that the trial court's voir dire questioning of the jury venire was insufficient and that the court erred by refusing to allow defense counsel to question the venire.
The record shows that the jury venire was sworn and qualified. The trial judge questioned the venire and ascertained that no venire person had been a member of the grand jury that returned the indictment against the defendant; that no member was related to or acquainted with the defendant; that no member was related to or had been represented by defense counsel; that no member was related to the prosecutor or any other member of the district attorney's office; that no member had any knowledge of the facts of the case; that no member was in law enforcement; that no member had a fixed opinion of the defendant's guilt or innocence; and that no venire person knew of any reason why he or she could not serve as a fair and impartial juror in this case. After each member stood for identification, the venire was allowed a short recess.
During that recess, the following exchange occurred between defense counsel and the trial judge:
 "MR. DEEN: For the record, I do not feel qualified to strike a jury of twelve on behalf of my client and provide him effective assistance of counsel due to limited questions the Court asked in voir dire and in not allowing the attorneys to ask questions.
"THE COURT: What would you want to ask?
 "MR. DEEN: Well, you know it is the practice now in this Circuit by our presiding judge that attorneys are not allowed to have jury lists, the master lists, at all, so all we get is the list of thirty when we come into trial. And to sit down — Mr. Nodd and I have sat down and are just now looking at these people. I would have liked to ask if anybody had had any prior jury service, the type of trials they sat on, was it criminal or civil, whether or not they decided for the defendant or the State in a criminal trial or the plaintiff or the defense in a civil case.
 "I'd like to know if members of their family who are in law enforcement, either now or in the past, or if they have any close personal friends that are in law enforcement. I would like to ask them if they would tend to believe a police officer over another witness merely because of the fact that the person is a policeman. I would like to know if they understand that the burden of proof in a criminal trial is different than in a civil case in that the defendant has to be convicted beyond a reasonable doubt and if they have any problems with that, and do they have any problems with the presumption of innocence.
 "Since this case involves drugs, I would like to ask them the fact that it involves drugs, would that mean that they are going to vote for the defendant to be found guilty no matter what, just because drugs are involved and no matter what the other evidence would be. *Page 143 
 "Those were some of the questions I wanted to get into with these prospective jurors.
 "THE COURT: In this case, I didn't deem it necessary for any voir dire to be conducted, it's a simple possession charge. Why don't I — so I will note your exception and your objection."
After it was determined that each party would have six strikes, defense counsel raised further objection, noting that, contrary to the past practice of the trial court, in this case no inquiry had been made to determine whether any member of the venire knew any witness for the State. Defense counsel complained that he was "really sort of just striking in the dark." The trial judge advised counsel, "Just do the best you can, I guess, or I'll have to exercise them [peremptory strikes] for you." After defense counsel complained further that he was "doing this under protest," and could not provide effective assistance of counsel, the trial judge stated that, after the jury had been selected, he would ask if any juror knew any of the witnesses.
After the jury had been selected and sworn, the trial judge did ask if any juror knew any of the State's witnesses. One juror indicated that he was "familiar with" the state's forensic criminologist, but that he really did not know him and would not give any more or less weight to his testimony.
In Alabama, a defendant had no "common law" right to either question or have the venire questioned for purposes of peremptory challenge.
 "The facts sought to be elicited from Hagan by the prisoner were precisely of this character. There had been a preliminary issue trial by the judge as to Hagan's competency as a juror in the case. The evidence — which, and the vehicles of which, are prescribed by statute — on that issue had been adduced, and the conclusion reached that he was in all respects qualified. Then, when there was no issue before the court, defendant's counsel sought to draw out facts, not for the purpose of aiding the court to determine any question before it, but solely and avowedly to aid them in exercising their unfettered election to accept or reject the juror, — a matter with which the court had and could have nothing to do. The refusal of the court to allow this to be done, its denial of counsel's right to consume the time of the court and of the public in gaining information for their guidance in the discharge of the private duty they owed to their client, is manifestly and palpably not a charge, opinion, or decision touching the case, and involving a question of law arising on the proceedings therein. It might as well be said, so far as the legal principle is concerned, that the refusal of a trial judge to allow disorder and confusion of any kind to prevail in his court, and his incidental orders in maintenance of the quiet and decorum of the court-room, could be made the bases of exceptions for review on appeal. It was considerations of this character which led us to substantially the same conclusion in Hawes' Case
[88 Ala. 37,] 7 South.Rep. 302, where defendant moved the court to propound a juror who had been declared competent the further inquiry whether he had not at some time in the past had a disqualifying opinion as to the guilt or innocence of the accused. We there said: 'We are unable to see what bearing or any relevancy the answer to this question could have had on the issue which the court was called on to determine. He was equally a competent juror whether he answered yea or nay. The only end to be subserved by inquiry on this point was to advise the defendant as to the expediency of peremptorily challenging the juror. Certainly there is no duty resting on the court to go into an inquisition, the sole purpose of which is to aid the defendant to determine whether he will challenge a juror peremptorily. But, even it be conceded that an affirmative response to the question would have authorized a challenge for cause, the action of the court must still be held free from error. To require the court to enter upon such an investigation would be even more objectionable, because involving a greater expenditure of time, than the practice condemned in *Page 144 
Bales' Case, of allowing such examination directly by defendant's attorney. There it is said: "We know of no authority, and we perceive no reason, for any such speculative, inquisitorial practice, consuming needlessly the time of the court, and offensive to the persons subjected to it. The rule is ancient that neither party has a right to interrogate a juror before he is challenged." ' Bales v. State, 63 Ala. 30. See, also, State v. Brooks, 92 Mo. 330; Penn v. State, 62 Miss. 450. The following cases involve substantially the same principle: Kemp v. Porter, 6 Ala. 172; McCollum v. Hubbert, 13 Ala. 282; Casky v. Haviland, Id. [13 Ala.] 314. We adhere to and reaffirm that doctrine, and are unable to concur with counsel, that it does not apply to the case at bar. The purpose of our statute in requiring a list of the names of the jurors summoned to the trial of a capital case, served on the defendant or his counsel of record one entire day before the day set for the trial, was to enable the accused to acquaint himself, out of court, and through private sources, with the facts necessary to an intelligent exercise of his election to accept or challenge each juror; and there ought to be no necessity, even from the defendant's point of view, for the time of the court to be taken up in the acquisition of information which it is no part of the court's duty to assist him in gaining, and which the law contemplates he shall have when he comes into court. Still it has, we believe, been to a considerable extent the practice of trial courts to allow such examination as was attempted here, and this they may yet do as a matter of favor. It is in view of this practice that we have deemed it proper to discuss the question at some length." Lundy v. State, 91 Ala. 100, 9 So. 189, 190-91 (1891).
Section 8662 of the Alabama Code of 1923 was "intended to further safeguard the rights of parties in obtaining a fair and unbiased consideration of the issues." Nix v. City ofAndalusia, 21 Ala. App. 439, 440, 109 So. 182 (1926). It provided:
 " 'Examination of Jurors. In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict.' "
This section became Title 30, § 52, of the Alabama Code of 1940.
"This statute has consistently been given a liberal interpretation, allowing a trial lawyer a broad right to question prospective jurors as to any matter which might aid him in the intelligent exercise of his right to peremptory challenge. . . . The examination is not confined to matters which disqualify a juror, but extends to any matter which might tend to affect the verdict. . . . The scope of the examination is left largely to the discretion of the trial judge."Alabama Power Co. v. Bonner, 459 So.2d 827, 831-32 (Ala. 1984) (citations omitted), overruled on other grounds; Cooper v.Bishop Freeman Co., 495 So.2d 559, 561-62 (Ala. 1986).
Title 30, § 52, Ala. Code 1940, was not carried forward and recodified in the Alabama Code of 1975. In civil practice, it was superseded by Rule 47(d), A.R.Civ.P., which "preserves the practice . . . by which the parties have a right to put supplementary questions if the court has conducted the initial examination." Committee Comments to Rule 47, A.R.Civ.P.
Despite the facts that Title 30, § 52, was not recodified in the 1975 Code and that there is no comparable statute or rule of procedure in criminal cases, the right recognized by Title 30, § 52, still exists in Alabama criminal practice.
 "In Griffin v. State, 383 So.2d 873
(Ala.Crim.App. 1980), the Court of Criminal Appeals recognized, as we do, that Title 30, § 52, Ala. Code 1940, was not carried forward for inclusion in Ala. Code 1975. Section 1-1-10, Ala. Code 1975. In Griffin, the court stated:
 " 'It seems that Ala. Code 1975 does not have a counterpart to Code of Alabama, Recompiled 1958, Tit. 30, § 52. *Page 145 
The language thereof is to be found, with some modification as noted, in Rule 47, Alabama Rules of Civil Procedure:
" '. . . .
 " 'Notwithstanding any apparent hiatus, there can be little doubt as to the law that has prevailed for many years in Alabama to the effect that in the process of selecting the jury from the venire afforded, each party has the right to have questions formulated by it propounded to the jury, either by the court or by the party as the court may determine, if such questions reasonably relate under the circumstances to the question of the qualification or interest or bias on the part of prospective jurors.'
"We agree." Bonner, 459 So.2d at 833.
Rule 18.4(c) of the proposed Alabama Rules of Criminal Procedure (Alabama Law Institute, January 1983), provides, in pertinent part, "The court shall permit the parties or their attorneys to conduct a reasonable examination of prospective jurors." The commentary to this section, at p. 202, states, "Section (c) allows the parties or their attorneys to also conduct the voir dire examination, and is in line with Alabama practice and local custom."
Although the scope of the examination of prospective jurors is left largely to the discretion of the trial judge,Bonner, 459 So.2d at 832, that discretion is subject to review.Clark v. State, 294 Ala. 493, 496, 318 So.2d 822 (1975). See Annot. 72 A.L.R.Fed. 638 (1985).
We have found very few cases in which the trial court has been reversed for disallowing a question on voir dire.Mitchell v. Vann, 278 Ala. 1, 6-9, 174 So.2d 501 (1965);Roberts v. State, 472 So.2d 444, 446-47 (Ala.Cr.App. 1985);Hawes v. State, 48 Ala. App. 565, 567, 266 So.2d 652 (1972).
The peremptory challenge has been recognized as "essential to the fairness of trial by jury," Lewis v. United States,146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892), and "one of the most important of the rights secured to the accused." Pointer v. United States, 151 U.S. 396, 408,14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). See also Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 1736, 90 L.Ed.2d 69 (1986) (Burger, C.J., dissenting); Batson, 476 U.S. at 106-07,106 S.Ct. at 1728 (Marshall, J., concurring). Even the majority inBatson recognized that "the peremptory challenge occupies an important position in our trial procedures." Batson,476 U.S. at 98-99, 106 S.Ct. at 1724. See also Swain v. Alabama,380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); Turnerv. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) ("[A] capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias."). Inadequate voir dire diminishes the statutory right of peremptory challenge, Ala. Code 1975, § 12-16-100, and may even render the right totally arbitrary and meaningless.
 "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. See Connors v. United States, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895). Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts." Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981).
Here, almost all of the evidence against the defendant came from officers of the Prichard Police Department. The State's case consisted of the testimony of two police officers and the forensic criminalist who identified the controlled substances. The defendant testified in his own behalf and denied smoking any marijuana and maintained that police lied about finding the cocaine on his person.
In a case such as this, where the prosecution relies heavily upon the testimony of *Page 146 
police officers, the trial judge must be cognizant of the risk that jurors might give more credence to witnesses called by the prosecution. In certain circumstances, the refusal of a judge to ask prospective jurors questions designed to weed out such bias may be reversible error. See United States v. Pappas,639 F.2d 1, 4-5 (1st Cir. 1980), cert. denied, 451 U.S. 913,101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); Therrien v. Vose,782 F.2d 1, 4 (1st Cir.), cert. denied, 476 U.S. 1162, 106 S.Ct. 2285,90 L.Ed.2d 727 (1986).
 "The scope of voir dire examination is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion. United States v. Ainesworth, 716 F.2d 769, 770 (10th Cir. 1983); United States v. Baker, 638 F.2d 198, 201 (10th Cir. 1980). We recognize that the court's failure to ask jurors the requested question ['Whether he or she would give more weight to the testimony of a law enforcement officer simply because he is a law enforcement officer'] may constitute reversible error when the case, like this, consists primarily of police testimony. See United States v. Baker, 638 F.2d at 201 n. 3; United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979); Faulkner Radio, Inc. v. F.C.C., 557 F.2d 866, 871-72 (D.C. Cir. 1977); Brown v. United States, 338 F.2d 543, 544-45
(D.C. Cir. 1964). However, reversal is not required in all such cases; rather, 'the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole.' Brown v. United States, 338 F.2d at 545; see also United States v. Baldwin, 607 F.2d at 1298; Faulkner Radio, Inc. v. F.C.C., 557 F.2d at 872 n. 36. Specifically, courts have held that refusal to ask the question does not amount to an abuse of discretion when the trial judge adequately covers the issue in other questions and in his charge to the jury." United States v. Espinosa, 771 F.2d 1382, 1405 (10th Cir.), cert. denied, Foreman v. United States, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).
Here, the inquiry concerning the testimony of police officers was not covered by any other question on voir dire or by the trial judge in his charge to the jury.
In State v. Hill, 196 Conn. 667, 495 A.2d 699, 702-03 (1985), the Supreme Court of Connecticut observed:
 "When important testimony is anticipated from certain witnesses whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination should be permitted. . . .
 "Nothing could be plainer than that a predisposition to attach greater or less credence to a witness' testimony simply because of that witness' position as an officer is inconsistent with the defendant's constitutional and statutory right to an impartial jury. The denial of such a fundamental right cannot be countenanced. The trial court's refusal to allow defense counsel to ask prospective jurors whether they would be inclined to give more weight to the testimony of a police officer merely because of that person's official status constituted an abuse of discretion. We find error and order a new trial."
See also State v. Fritz, 204 Conn. 156, 165-66, 527 A.2d 1157,1162 (1987) ("testimony from state officials and police officers was crucial in establishing the State's case, and, therefore, the defendant had the right to inquire as to whether a juror might be more, or less, inclined to credit their testimony solely because of their official status"). In Uptainv. State, 534 So.2d 686, 687-88 (Ala.Cr.App. 1988), this Court held that a challenge for cause should be granted where a venire person indicates that he would be more inclined to believe the testimony of a law enforcement officer than that of other witnesses simply because he was a law enforcement officer.
In a case such as this, the possibility of prejudice is real and "[t]he defense must be given a full and fair opportunity to expose bias or prejudice on the part of the veniremen."United States v. Robinson, 475 F.2d 376, 380-81 (D.C. Cir. 1973). *Page 147 
 "The possibility of prejudice is real, and there is consequent need for a searching voir dire examination, in situations where, for example, the case carries racial overtones, or involves other matters concerning which either the local community or the population at large is commonly known to habor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact. In a case involving such sentiment, the trial court must take it into account and govern the voir dire accordingly. Still other forms of bias and distorting influence have become evident, through experience with juries, and have come to be recognized as a proper subject for the voir dire. An example is the problem that jurors tend to attach disporportionate weight to the testimony of police officers. See Brown v. United States [338 F.2d 543 (D.C. Cir. 1964)]; Sellers v. United States [271 F.2d 475 (D.C. Cir. 1959)].
 "When the matter sought to be explored on voir dire does not relate to one of those recognized classes, it is incumbent upon the proponent to lay a foundation for his question by showing that it is reasonably calculated to discover an actual and likely source of prejudice, rather than pursue a speculative will-o-the-wisp." United States v. Robinson, 475 F.2d 376, 381 (D.C. Cir. 1973).
In finding in this case that the trial judge abused his discretion in refusing to inquire or allow any inquiry on this matter, we do not retreat from our holdings in other cases
where we found no abuse of discretion in refusing to make this or similar inquiries. Roberson v. State, 384 So.2d 864, 868
(Ala.Cr.App.) cert. denied, 384 So.2d 868 (Ala. 1980) (child);Radford v. State, 348 So.2d 880, 884-85 (Ala.Cr.App. 1977) (relatives); Powell v. State, 53 Ala. App. 30, 35-36,297 So.2d 163 (1974) (police officer). Each instance of the alleged abuse of discretion must be judged upon its own particular merits in the context of the specific facts and circumstances of each individual case. On appeal, this Court will indulge every presumption that the trial court ruled correctly, Ballard v.State, 236 Ala. 541, 542, 184 So. 260 (1938), and will reverse only where there has been a clear abuse of discretion. Pace v.State, 284 Ala. 585, 586, 226 So.2d 645 (1969).
Furthermore, our holding that the trial judge abused his discretion in refusing to make inquiry on the question concerning police officer testimony should not be understood as a finding that the trial judge did not err in refusing the other inquiries requested by defense counsel.
We do not believe that the trial lawyer's right to a probing, wide-ranging voir dire examination has been rendered illusory by the companion rule that the scope and extent of that examination are within the discretion of the trial judge. SeeClark v. State, 294 Ala. 493, 496, 318 So.2d 822, cert. denied,423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975), and Ward v.State, 281 Ala. 650, 206 So.2d 922 (1967), rejecting the comment of the intermediate appellate court in Ward v. State,44 Ala. App. 229, 253, 206 So.2d 897 (1966), cert. denied,281 Ala. 650, 206 So.2d 922 (1967), that "our Supreme Court has avulsed the mandatory 'shall have the right' . . . into a mere precatory adjuration to the humane instincts of the trial judge."
We hold that, where the State's case consists primarily of police testimony and that testimony is crucial in establishing the State's case, the defense has a right to inquire, either through counsel or the trial judge, whether any member of the jury venire might be more, or less, inclined to credit the testimony of a police officer simply because of his or her official status. The trial judge's refusal of such requested inquiry will constitute an abuse of discretion when the issue has not been adequately covered in other questions on voir dire or in the judge's charge to the jury.
The judgment of the circuit court is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur. *Page 148